**UNITED STATES of America, Plaintiff,**

v.

**James A. KUDASIK, Elinor A. Evenech, John Evenech, Danette A. Cook, Johnstown Bank and Trust Company, Pauline L. Zovnar, First Philson Bank, N.A., Lola J. Wohlfarth, Somerset County, Somerset Borough, and Borough of Central City, Defendants,**

**and**

**Somerset Area School District, Central City Borough, Shade–Central City School District, Jefferson Township, Milford Township, Rockwood Area School District, and Shade Township, Intervenors.**

Civil Action No. 96–209J.

United States District Court, W.D. Pennsylvania.

June 8, 1998.

---

Tina M. Oberdorf, United States Attorney's Office, Pittsburgh, PA, Charles M. Flesch, United States Department of Justice,

Tax Division, Washington, DC, for United States of America.

James A. Kudasik, Somerset, PA, pro se.

William R. Carroll, Somerset, PA, for Rockwood Area School District, Somerset Borough, Jefferson Township, Somerset Area School District, Central City Borough, Shade Township, Shade–Central City School District, Milford Township.

## MEMORANDUM and ORDER

D. BROOKS SMITH, District Judge.

### I. *Introduction*

The United States filed a complaint against delinquent taxpayer, James A. Kudasik, seeking to reduce personal income tax assessments to judgment, set aside fraudulent conveyances of real estate and foreclose on federal tax liens. Before the court are the unopposed motions of the government for summary judgment and default judgment. Dkt. no. 32.

### II. *Facts*

In 1976, James A. Kudasik, an attorney, purchased for $50,000 a two story building located at 158 E. Union Street in the Borough of Somerset. Located in the county seat of Somerset County, Pennsylvania, the structure was intended to serve as both his residence and law office. Dkt. no. 1, exh. A; dkt. no. 35, exh. A at 32, exh. D ¶ 21. In October 1979, Kudasik and his sister, Elinor Evenech, purchased for $16,000, as joint tenants with the right of survivorship, a 4.54 acre parcel of land, including mineral rights, in Milford Township, Somerset County. Dkt. no. 1, exh. J. Almost a year later, Kudasik purchased for $13,500, two parcels of ground situated in the Borough of Central City, Somerset County. Dkt. no. 1, exh. D. Less than a month later, Kudasik and a business partner conveyed in exchange for $7,000 two parcels of real estate, together with all the mineral rights, situated in Jefferson Township, Somerset County, to Kudasik, his sister Elinor and her husband, John Evenech, as joint tenants with the right of survivorship. Dkt. no. 1, exh. G.

On March, 25, 1983, Kudasik granted a mortgage on the Central City lots to Citizens National Bank in Windber in the amount of $16,500. Dkt. no. 35, exh. 6. On June 2, 1987, Kudasik conveyed the Central City parcels of land [1] to his sister, Elinor, for a one dollar consideration. Dkt. no. 1, exh. E. The deed from Kudasik to Elinor was not recorded at that time, and Kudasik did not notify the mortgagee that the title had been transferred. Dkt. no. 35, exh. A at 61. On July 3, 1990, the deed conveying the Central City parcels to Elinor was recorded. On July 12, 1990, the Evenechs conveyed their interest in the real estate to their daughter, Danette Cook, and a deed was recorded on August 17, 1990. Dkt. no. 1, exh. E and F.

The Central City parcels were rental property and the local realty taxes were sometimes paid by the lessees and at other times by Kudasik. Dkt. no. 35, exh. A at 48. Despite the unrecorded conveyance to his sister on June 2, 1987, Kudasik used the Central City parcels as part of the collateral for a second mortgage granted to Somerset Trust Company on June 24, 1987. Dkt. no. 35, exh. 4. Kudasik satisfied the earlier mortgage to Citizens' National Bank in June 1990. Dkt. no. 35, exh. 7. In February 1991, despite the conveyances from Kudasik to Elinor and then the Evenechs to Cook, Kudasik granted yet another mortgage in the amount of $10,-563.48 to Cenwest National Bank which he satisfied in April 1993. Dkt. no. 35, exh. 8, 9; dkt. no. 35, exh. A at 65. The mortgage to Somerset Trust Company was marked satisfied on March 19, 1993. Dkt. no. 35, exh. 4. Although he has not been the record owner of the Central City parcels, Kudasik has "always considered [him]self to be the owner of the property." Dkt. no. 35, exh. A at 68.

On June 2, 1987, by a separate deed, Kudasik also conveyed to Elinor his undivided

---

1. The deed conveying the Central City parcels to Evenech also conveyed two lots of ground situated in the Township of Shade, Somerset County, Pennsylvania. Dkt. no. 1, exh. E. These lots had been conveyed to Kudasik by his sister, Nettie Kudasik, on May 27, 1987 and it does not appear from the record that the government seeks to set aside this conveyance. See dkt. no. 1. For that reason, Shade Township, although previously granted status as an intervenor, has no standing to assert a claim.

one-half interest in the Jefferson Township parcels and his undivided one-half interest in the Milford Township land. Dkt. no. 1, exh. H. The deed for those parcels was not recorded until June 26, 1990. *Id.* The Evenechs also conveyed the Jefferson and Milford Township pieces of land to their daughter, Danette Cook, on July 12, 1990. Dkt. no. 1, exh. I. This deed was recorded on August 17, 1990.

When the Jefferson Township parcels were conveyed in 1980 to Kudasik and his sister, Elinor, they were encumbered by a $20,000 mortgage granted by Kudasik and his partners in March 1978 to Somerset Trust Company. Dkt. no. 35, exh. 3. A concrete block motel had been erected on one of the Jefferson Township parcels and the Evenechs established their residence in a mobile home located on the premises. Dkt. no. 1, exh. G; dkt. no. 35, exh. D ¶ 23. Despite Kudasik's one-half interest in the property and Kudasik's partnership's liability on the mortgage, the Evenechs have paid the local taxes and utilities for the Jefferson Township parcels, as well as the mortgage payments, since 1980. Dkt. no. 35, exh. A at 76; dkt. no. 35, exh. D ¶ 23. The 1978 mortgage was satisfied in March 1994. Dkt. no. 1, exh. G. The Milford Township parcel is unimproved and the Evenechs have paid the assessed local taxes since they acquired their interest in the real estate in 1979. Dkt. no. 35, exh. D ¶ 24.

Finally, Kudasik transferred his interest in the Union Street building to his sister in March 1990. Dkt. no. 1, exh. B. Although Somerset Trust Company held a June 1987 mortgage that was secured by the Union Street property, Kudasik did not notify the mortgagee of the transfer. Dkt. no. 35, exh. 4; dkt. no. 35, exh. A at 40. Kudasik continued to make all the mortgage payments until it was satisfied in March 1993. Dkt. no. 35, exh. A at 40. Kudasik characterized the mortgage as a "business loan," and admitted that he deducted the interest in preparing his income tax return. Dkt. no. 35, exh. A at 41. Then, on August 17, 1990, the Evenechs deeded their interest in the real estate to their daughter, Danette Cook. Dkt. no. 1, exh. C. Kudasik continued to live in and work from the Union Street building. From Kudasik's perspective, he believed that he was the owner of the Union Street property and "always treated it that way." Dkt. no. 35, exh. A at 42. Over the years, regardless of who held legal title to the property, Kudasik paid the local real estate taxes, the utilities, insurance and mortgage payments. *Id.* at 40, 47.

Kudasik, however, did not pay his personal income tax for calendar years 1983, 1985–1986, 1988–1991, and 1993, although it appears that he filed 1040 income tax returns for those years. *See* dkt. no. 33, at 6 n. 5; dkt. nos. 1 and 2 ¶¶ 30, 40, 50, 58. As a result of Kudasik's delinquency, the IRS issued assessments for the tax due, plus statutory interest and penalties. The first assessment was issued on November 15, 1993 for calendar years 1983 and 1985. Assessments followed in 1994 and 1995 for the remaining calendar years of 1986, 1988–1991 and 1993. *See* dkt. no. 34 ¶ 4. Notice of the federal tax liens for calender years 1983 and 1985–1986 was filed on June 28, 1994 in the Somerset County Prothonotary's Office showing an unpaid balance of $38,631.39. Dkt. no. 35, exh. B. Notice of the federal tax liens for tax years 1988–1990 was filed later that year showing an unpaid balance of $42,791.55. *Id.* at 2. A year later, on October 24, 1995, notice of the federal tax liens for 1991 and 1993 was filed indicating a balance due of $57,961.15.

Notice of a federal tax lien against Danette Cook, Kudasik's niece, was filed on March 27, 1996. The notice indicated Kudasik's indebtedness of $149,384.09 for federal taxes, interest and penalties for calendar years 1983, 1985–1986, 1988–1991 and 1993. Cook was designated "as nominee for James A. Kudasik ... to the extent of his interest in" the real estate on Union Street, and in Central City and Jefferson and Milford Townships. Dkt. no. 35, exh. B.

Subsequently, on August 5, 1996, the government filed this civil action "for the purpose of reducing income tax assessments to judgment, setting aside numerous fraudulent conveyances of four separate real properties, and foreclosing federal tax liens against the four real properties...." Dkt. no. 1 ¶ 1. The government sued Kudasik, Mr. and Mrs. Ev-

enech, and Danette Cook. The complaint also named as defendants Johnstown Bank and Trust, First Philson Bank, N.A., Lola J. Wohlfarth, and Pauline L. Zovnar, due to their alleged creditor status. Some of the municipal entities within which the parcels of land were situated were named as defendants, and others were granted leave to intervene pursuant to Federal Rule of Civil Procedure 24(a). *See* dkt. no. 18.

The first of the government's five count complaint seeks to reduce to judgment the assessments totaling $138,206.26. The remaining four counts seek to set aside as fraudulent the conveyances from Kudasik to Elinor and from the Evenechs to Cook. If the conveyances are set aside, Kudasik would be deemed the legal owner at the time the IRS assessments were issued and foreclosure would lie.

Kudasik, who is an attorney, has filed an answer to the complaint. In it, he admits that he failed to pay income taxes due for 1983, 1985–1986, 1988–1991, and 1993, but he disputes the statutory assessments for interest and penalties. Dkt. nos. 1 and 2 ¶¶ 20–21. Kudasik denies that the conveyances to his sister, Elinor, and to his niece, Danette Cook were fraudulent and void, and that he conveyed the land with the intent to hinder, delay or defraud the government. Dkt. no. 2 ¶¶ 32, 42, 52, 60. Kudasik avers that the conveyances were made for the purpose of "affixing equity for a legitimate business purpose which business venture failed." Dkt. no. 2 ¶ 35; *see also* ¶¶ 42–44, 52, 60. He admits that his niece, Danette Cook, was his nominee for each of the four properties. Dkt. nos. 1 & 2, ¶ 9.

During Kudasik's deposition, he denied that the transfers were fraudulent or for "the purposes of avoiding a government obligation. . . ." Dkt. no. 35, exh. A at 93. He conceded that after the transfers he had no "recorded" assets and asserted that "if it was not for the foreclosures, these properties would have been transferred back to [him] by Danette Everett, with the exception of my sister Elinor. I would have made sure that she continued to have the motel and the properties that belong to her." *Id.*

All defendants have been served, except for John Evenech, who died on January 15, 1994. Dkt. no. 2 ¶ 8. Default was entered against Elinor Evenech, Danette Cook and Johnstown Bank and Trust Company. Dkt. nos. 19, 22, 23. First Philson Bank, Pauline Zovnar and Lola Wohlfarth were dismissed as defendants. Dkt. nos. 25, 26, 38.

After the close of discovery, the government moved for summary judgment against Kudasik and for default judgments against Elinor Evenech, Danette Cook and Johnstown Bank and Trust. Neither Kudasik nor Evenech, Cook nor Johnstown Bank and Trust have filed any opposition to the government's motions.

### III. *Summary Judgment Standard*

Summary judgment shall be "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When a motion for summary judgment is properly supported by affidavits or the like, the non-moving party cannot defeat the motion by resting on the bare allegations contained in his or her pleadings. That is, once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, *see Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988), the non-moving party is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories, and admissions on file in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That is, the nonmoving party "may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing Fed. R.Civ.P. 56(e)).

IV. *Judgment as to the Assessed Income Tax, Interest and Penalties*

■ Section 6321 of the Internal Revenue Code provides that:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal belonging to such person.

26 U.S.C. § 6321. Section 6322 explains that the "lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed ... is satisfied...." 26 U.S.C. § 6322. An assessment by the IRS is presumed to be correct. *Freck v. I.R.S.*, 37 F.3d 986, 991 n. 8 (3d Cir.1994) ("Assessments are generally presumed valid and establish a *prima facie* case of liability against a taxpayer ..."); *United States v. Vespe*, 868 F.2d 1328, 1331 (3d Cir.1989); *Psaty v. United States*, 442 F.2d 1154, 1160 (3d Cir.1971).

Here, the assessments issued to Kudasik establish that he is liable for $138,206.26. Dkt. nos 1 and 2 ¶¶ 20–21; *see also* dkt. no. 34, exh. 1 (certified Form 4330). Kudasik admits that he is indebted to the government in this amount and that he has no basis to challenge the statutory additions reflected on the assessments. Dkt. no. 35, exh. A at 14–16. The government asserts that the amount owing as of October 31, 1997 increased to $186,041.86. Dkt. no. 34 ¶ 4. Nor has Kudasik come forward to dispute this amount. Consistent with Rule 56(c), judgment will be entered in favor of the government and against Kudasik in the amount of $186,041.86 which represents Kudasik's tax liability for calendar years 1983, 1985–1986, 1988–1991 and 1993 as of October 31, 1997.

V. *Attachment of the Federal Tax Liens*

■ The statutory language of § 6321 " 'all property and rights to property' is broad and reveals on its face that Congress

meant to reach every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719–20, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985) (quoting 26 U.S.C. § 6321). "A lien arising under Section 6321 cannot, however, extend beyond the property interest held by the taxpayer. Consequently, a federal tax lien attaches only to the property interests of the delinquent taxpayer at the time of assessment." *Gardner v. United States*, 34 F.3d 985, 987 (10th Cir.1994) (citations omitted).

Accordingly, the assessments issued to Kudasik operated as a lien when made in 1993, 1994, and 1995. Those assessments were not made, however, until after Kudasik had conveyed his interests in the four real estate holdings to his sister, and she and her husband, in turn, conveyed them to their daughter. The question remains, therefore, whether Kudasik had any interest in these four real estate holdings in 1993, 1994 and 1995.

The government contends that Kudasik was the sole owner of these four properties because the conveyances were fraudulent when made. It argues that the fraudulent nature of the conveyances may be demonstrated under any of three different theories. In the event any conveyance should not be found fraudulent, the government asserts that it may proceed against that property because of Cook's nominee status.

VI. *Fraudulent Conveyances*

The government contends that Kudasik's conveyances may be declared fraudulent under sections 351 and 444 of Title 21 of the Pennsylvania Statutes which specify the recording requirements for deeds and conveyances. 21 P.S. §§ 351, 444. Alternatively, it argues that Pennsylvania's Uniform Fraudulent Conveyance Act permits nullifying the deeds based upon findings of either actual or constructive fraud. *See* 39 P.S. §§ 354, 357.[2]

A. *Applicability of Pennsylvania's Recording Statutes*

■ The government's first argument relies upon its status as a creditor for past due taxes and section 444 which provides:

---

**2.** As the government noted in its brief, despite the repeal of this Act in 1993, it is still applicable to conveyances which occurred before February 1, 1994, the effective date of the new Uniform Fraudulent Transfer Act, 12 Pa.C.S.A. § 5101 *et seq.*

All deeds and conveyances ... shall be recorded in the office for the recording of deeds ... within ninety days after the execution of such deeds or conveyances and every such deed and conveyance ... which *shall not* be proved and recorded as aforesaid, shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for a valid consideration, or *any creditor of the grantor* or bargainor....

21 P.S. § 444 (emphasis added). In 1894, however, the Pennsylvania Supreme Court held that this provision is inoperative against creditors. *Davey v. Ruffell,* 162 Pa. 443, 29 A. 894 (1894). It declared that "[t]he act is to be read as though the word 'creditors' was not in it, and in this respect the act of 1775 is unchanged." *Id.* 29 A. at 896; *see also Smith v. Young,* 259 Pa. 367, 103 A. 63 (1918); *In re Lukens,* 138 F. 188 (E.D.Pa. 1905); *English v. Ross,* 140 F. 630, 634–635 (M.D.Pa.1905). Accordingly, Kudasik's conveyances to his sister cannot be set aside as fraudulent simply because the government was a creditor and the deeds were not recorded within ninety days.[3]

### B. *Uniform Fraudulent Conveyance Act*

Applying the Uniform Fraudulent Conveyance Act, I conclude that several of the conveyances at issue here are fraudulent. Conveyances may be set aside as fraudulent under the Act based on either actual or constructive fraud. 39 P.S. §§ 354, 357. I will address the government's theory of actual fraud first.

Section 357 provides that:

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors.

39 P.S. § 357. In *Iscovitz v. Filderman,* 334 Pa. 585, 6 A.2d 270, 272 (1939), the Pennsylvania Supreme Court recognized that the determination of whether there was an actual intent to hinder, delay or defraud under the Act must "be proved by facts and circumstances which taken together show the existence of fraud. Although the intent must exist at the time the transfer was made, it may be shown by conduct subsequent to the execution of the conveyance of such a nature as to show fraud in its inception." *Id.* (citations omitted). The court affirmed the decree that several conveyances from husband to wife, and then from parents to children, were made with the intention of defrauding the creditor plaintiff. The court reasoned

[w]here the transaction is between husband and wife actual intent *does appear* where it is shown that there was a deed given for a nominal consideration. This is but a presumption of fact and places on the wife the burden of showing the fairness of the transaction. Since family collusion by a debtor is so easy to execute and so difficult to prove, the evidence to sustain the claim of such cases must be clear and satisfactory.

*Id.* (emphasis added) (citations omitted); *see also County of Butler v. Brocker,* 455 Pa. 343, 314 A.2d 265, 268 (1974).

■ Section 351 of the Act defines creditor as a "person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." 39 P.S. § 351. Here, the government was a creditor by virtue of its claim for unpaid taxes. These taxes were due on April 15 of the years following the close of the tax years 1983, 1985–1986, a time before the conveyances were made. *See United States v. St. Mary,* 334 F.Supp. 799, 802–03 (E.D.Pa.1971) (citing 26 U.S.C. §§ 6151, 6211, 6513(b), 6601, 6653(a)).

■ Relying on its creditor status here, the government contends that the transfers of the Union Street and Central City properties were fraudulent. It points out that, except for the difference in familial relationship, the transfers are like those in *Iscovitz*

---

**3.** I recognize that there is more recent authority from the Eastern District of Pennsylvania which finds § 444 operative as to the creditors of a grantor. *See United States v. Craig,* 936 F.Supp. 298, 300 (E.D.Pa.1996) (citing *Raimo v. United States,* 1987 WL 28361 (E.D.Pa.1987)). The application of § 444 in those cases, however, fails to cite any authority and relies on the statutory language alone without regard to the construction given it in decisions of Pennsylvania's highest appellate court.

which were for the nominal consideration of one dollar. I agree. Because the Court in *Iscovitz* was concerned about "family collusion," a presumption applies here that Kudasik intended to defraud the government when he transferred the Union Street and Central City parcels. *Iscovitz*, 6 A.2d at 272. That presumption places upon Elinor the burden of showing the fairness of the transaction. Because she has not appeared, and there is no evidence of record to support a finding of "fairness," the "clear and satisfactory" burden is not met. The Union Street and Central City conveyances must be set aside pursuant to 39 P.S. § 359(1)(a). The subsequent conveyance to Danette Cook does not affect the government's right to have the conveyance set aside inasmuch as she was not a "purchaser for a fair consideration...." *Id.*; *Iscovitz*, 6 A.2d at 272.

◼ According to the government, the conveyances of the Jefferson and Milford Township parcels should also be set aside because those conveyances were constructively fraudulent under § 354 of the Uniform Fraudulent Conveyance Act. That section provides:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

39 P.S. § 354. Section 353 states that "fair consideration" for the property is given "[w]hen, in exchange for such property or obligation, as a fair equivalent therefor and in good faith, property is conveyed or an antecedent debt is satisfied...." 39 P.S. § 353.

The record reveals that Kudasik and the Evenechs became joint tenants with the right of survivorship of the Jefferson Township parcel in September 1980 in a conveyance from Kudasik and his partner. Dkt. no. 1, exh. G. The purchase price was $7,000, but the land was encumbered by a $20,000 mortgage granted by the Kudasik partnership in March 1978. Dkt. no. 35, exh. 3. The Evenechs effectively assumed the mortgage after the 1980 conveyance by making all of the payments due until the mortgage was satisfied in March 1994. *Id.*; exh. A at 76; exh. D ¶ 23. In addition, the Evenechs paid all the local realty taxes for the land from the date that they acquired their interest and established their residence on the premises. Then, in 1987, Kudasik conveyed his undivided one-half interest in the land to his sister. In light of this evidence, I conclude that there was fair consideration for the Jefferson Township parcel, and the transfer will not be set aside as fraudulent under § 354.

◼ The Milford Township parcel, however, does not appear to have been transferred for a fair consideration. Because Kudasik was indebted to the government at the time of the transfer, the burden is upon the defendants to demonstrate that the transfer did not render Kudasik insolvent. *People's Savings & Dime Bank & Trust Co. v. Scott*, 303 Pa. 294, 154 A. 489, 490 (1931). This, the defendants have failed to do. Accordingly, Kudasik's conveyance of his one-half interest in the Milford Township land in 1987 to his sister was fraudulent under § 354 of the Act and must be set aside pursuant to § 359(1)(a). The subsequent conveyance by Elinor to her daughter will likewise be set aside as there was only a nominal consideration for that conveyance. *Id.*; *Iscovitz*, 6 A.2d at 272.

## VII. *Nominee Status*

◼ My determination that the Jefferson Township conveyance was valid under the Uniform Fraudulent Conveyance Act does not end my inquiry as to that parcel. I must still address the government's argument that this parcel should be foreclosed upon because of the nominee lien. "Property of the nominee or alter ego of a taxpayer is subject to the collection of the taxpayer's tax liability." *Shades Ridge Holding Co. v. United States*, 888 F.2d 725, 728 (11th Cir. 1989). The critical factor in determining whether one is a nominee is whether the taxpayer "has 'active' or 'substantial' control." *Id.* Factors which inform that determination include the amount of consideration paid by the nominee, whether the property was placed in the nominee's name in anticipation of a suit, the relationship between the

transferor and the nominee, the failure to record the conveyance, the retention of possession by the transferor, and the continued enjoyment by the transferor of the benefits associated with the property. *United States v. Klimek*, 952 F.Supp. 1100, 1113 (E.D.Pa. 1997).

Here, it is clear that Kudasik did not exercise active or substantial control over his one half interest in the Jefferson Township property. It is true that there was a substantial delay in the recording of the Jefferson Township deed and that there are close relationships between Kudasik, Elinor and Cook. Yet, as I noted above, Elinor provided a fair consideration for the property and there are no indicia of Kudasik's continued enjoyment of the property after he conveyed his undivided one-half interest. For those reasons, and despite Kudasik's admission that Cook is his nominee, I conclude that Cook is not Kudasik's nominee for the Jefferson Township parcel. Summary judgment will be denied.

### VIII. *Municipal Liens*

█ The government also seeks summary judgment against the municipalities for these four real estate holdings. It contends that these municipalities are required to establish their claims and the amounts thereof.

█ "[I]n the application of a federal revenue act, state law controls in determining the nature of the legal interest[s]...." *Aquilino v. United States*, 363 U.S. 509, 513, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). Under Pennsylvania law,

> all taxes ... levied by any taxing district on any property ... shall be and are hereby declared to be a first lien on said property. Such liens shall have priority to and be fully paid and satisfied out of the proceeds of any sale of said property held under the provisions of this act.

72 P.S. § 5860.301. Accordingly, the municipalities have a first lien for any delinquent unpaid taxes on the Union Street, Central City and Milford Township parcels. *See In the matter of Vigne*, 18 B.R. 946 (Bankr. W.D.Pa.1982) (finding claim by municipality for local realty taxes had priority over other liens).

### IX. *Foreclosure*

Because Section 403 of the Internal Revenue Code permits foreclosure of the federal tax liens against any property in which Kudasik has an interest, 26 U.S.C. § 7403(c), and because I have concluded that Kudasik is the owner of the Union Street and Central City properties and has a one-half interest in the Milford Township parcel, these properties may be sold to satisfy the tax liens. *United States v. Rodgers*, 461 U.S. 677, 694, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983). The proceeds from the sale must be used to satisfy any claims for delinquent municipal taxes which have first priority pursuant to 72 P.S. § 5860.301. The remaining proceeds for the Union Street and Central City properties shall be used to satisfy the judgment against Kudasik. The remaining proceeds from the sale of the Milford Township parcel must be distributed between the government and Ms. Cook, the holder of the other undivided one-half interest. *Id*

### X. *Default Judgment*

The motion for default judgment against Elinor Evenech, Danette Cook and Johnstown Bank and Trust pursuant to Federal Rule of Civil Procedure 55 will be granted.

An appropriate order will follow.

### ORDER

AND NOW, this 8th day of June, 1998, consistent with the foregoing memorandum, it is hereby

ORDERED AND DIRECTED that:

1. The government's Motion for Default Judgment, dkt. no. 32, against Elinor Evenech, Danette Cook and Johnstown Bank and Trust Company is GRANTED.

2. The government's Motion for Summary Judgment, dkt no. 32, is GRANTED IN PART and DENIED IN PART as follows:

A. Judgment is granted in favor of the United States and against James A. Kudasik in the amount of $186,041.86 (the tax liabilities for tax years 1983, 1985–1986, 1988–1991, and 1993) plus interest from October 31,

**510**

1997, to the date that the judgment is satisfied.

B. The conveyances of the Union Street and Central City parcels and the one-half interest in the Milford Township parcels from James A. Kudasik to Elinor Evenech, as more particularly described in dkt. no. 1, exh. B, E, H, are set aside as fraudulent under Pennsylvania's Uniform Fraudulent Conveyance Act, 39 P.S. §§ 357, 359(1)(a) and declared null and void. The conveyances of the Union Street and Central City parcels and the one-half interest in the Milford Township parcel from Elinor and John Evenech to Danette A. Cook, as more particularly described in dkt. no. 1, exh. C, F, I, are set aside as fraudulent under Pennsylvania's Uniform Fraudulent Conveyance Act, 39 P.S. § 359(1)(a) and declared null and void.

C. The federal tax liens, arising from the assessments issued by the Internal Revenue Service to James A. Kudasik on November 15, 1993, July 25, 1994, April 4, 1994, May 9, 1994, June 27, 1994, September 12, 1994 and October 9, 1995, attached to James A. Kudasik's fee simple interest in the Union Street and Central City properties and his undivided one-half interest in the Milford Township property on the date that such assessments were issued.

D. Judgment shall be GRANTED in favor of Somerset County, Somerset Borough, Somerset Area School District, the Borough of Central City, Shade–Central City School District, Milford Township and Rockwood Area School District, and against the United States to the extent that each of these municipal entities has a first lien for any delinquent tax at the time the Union Street, Central City and Milford Township properties are sold *and* said municipality has furnished a certified claim for delinquent taxes to the United States Marshal Service in advance of the sale.

E. The United States' motion for summary judgment against Shade Township and Jefferson Township is DENIED as moot.

F. The Union Street, Central City properties and Milford Township properties shall be exposed to sale at public auction by the United States Marshal pursuant to 26 U.S.C.

§ 7403(c). The distribution of the proceeds from the sale of each property shall be allocated first to satisfy the certified claim, if any, for delinquent taxes of any of the municipalities cited in paragraph 2.D of this order. Then, the remaining proceeds from the sale of the Union Street and Central City properties shall be used to satisfy the judgment against delinquent taxpayer James A. Kudasik. The remaining proceeds from the sale of the Milford Township property shall be distributed in equal parts to Danette Cook and the government.

G. The United States shall, within thirty (30) days from the date that this Order and Judgment is entered on the docket, submit to the Court a proposed Order directing the sale of the Union Street, Central City and Milford Township properties.

The Clerk shall mark this case CLOSED.