

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-11-2000

# United States v Green

Precedential or Non-Precedential:

Docket 98-1482

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"United States v Green" (2000). *2000 Decisions.* Paper 6.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/6

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 11, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-1482

UNITED STATES OF AMERICA

v.

HOWARD I. GREEN; MARY GREEN;
ROYLAN FINANCE; ERNESTINE WOODMANSEE

Howard I. Green; Mary Green,

        Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 96-7275)
District Judge: Honorable Marjorie O. Rendell

Submitted Under Third Circuit LAR 34.1(a)
November 4, 1999

BEFORE: BECKER, Chief Judge, and GREENBERG
and CUDAHY,* Circuit Judges

(Filed: January 11, 2000)

        LOUIS C. RICCIARDI, ESQ.
        Trujillo, Rodriguez & Richards
        226 West Rittenhouse Square
        The Penthouse
        Philadelphia, PA 19103

        Counsel for Appellants
_____

* Honorable Richard D. Cudahy, United States Circuit Judge for the
Seventh Circuit, sitting by designation.

LORETTA C. ARGRETT
WILLIAM S. ESTABROOK
SARA ANN KETCHUM
Tax Division
Department of Justice
P.O. Box 502
Washington, D.C. 20044

MICHAEL R. STILES
United States Attorney
Suite 1250
615 Chestnut Street
Philadelphia, PA 19106

Attorneys for Appellee

OPINION OF THE COURT

CUDAHY, Circuit Judge.

This case stems from Howard Green's efforts to stay one step ahead of his creditors, including the United States government. During several years of financial struggle, bankruptcy filings, flight from federal prosecution and ultimately jail time, Green underestimated his federal tax liabilities on his income tax returns in 1979, 1980 and 1981. The IRS eventually caught up with Green and in 1992 attempted to foreclose against all of his property, including property in Huntingdon Valley, Pennsylvania. Green responded that he had conveyed the Huntingdon Valley property to his wife in 1981, thus insulating it from foreclosure. The trial court deemed the conveyance fraudulent and set it aside. Green now appeals, and we affirm.

I. Background

In the late 1970s and early 1980s, Green was president and chairman of the board of Fidelity America Financial Corporation and its three subsidiaries. In 1981, hefiled for corporate bankruptcy protection for the companies. According to a bankruptcy trustee's complaint against him, Green and other Fidelity officers had been conducting a

2

fraudulent financial scheme with the companies. See Kranzdorf v. Green, 582 F. Supp. 335, 337–38 (E.D. Pa. 1983). Green allegedly persuaded a company employee to prepare financial statements "for use in inducing investments by limited partners and loans by commercial lenders." Id. at 337. Apparently, the loans were used to start new limited partnership syndications, which were not financially viable, in part because of Green's corporate waste. See id. at 337–38.

During the years that Green's business scheme was "collapsing," (Lower Ct. Op. at 4) he was experiencing upheaval in his private life as well. In September 1979, Howard entered into an agreement for separation and property settlement with his first wife, Ina. Two months later, he met Mary Woodmansee, whom he married in April 1980. Throughout this period, in tax years 1979, 1980 and 1981, Howard substantially underreported his federal income tax liabilities.

In 1981, Green transferred an interest in his residence to Mary. The validity of that transfer is the heart of this appeal. For context, however, we outline Howard's subsequent maneuvers. In 1981, Green liquidated a trust worth approximately $1.4 million. In 1983, the federal government indicted Green on charges of conspiracy, securities fraud, mail fraud and the filing of a false income tax return for the 1979 tax year. In June 1983, two months after his federal indictment, Green transferred a portion of his interest in his home to his children. In September 1983, Howard and Mary opened Maryland bank accounts (Mary disguising her appearance by wearing a black wig and glasses) to which they transferred money. Then theyfled to Maryland. A year later, officials apprehended Green in Baltimore, where he was redeeming coupons from his bearer bonds. He was carrying two sets of false identification at the time. Later in 1984, Green pleaded guilty to many counts of the indictment. He paid about $1 million restitution and served 30 months in jail. 1

_____

1. Howard was released from prison in 1987, but his machinations continued. The next year, he received an examination report letter from the Internal Revenue Service (IRS) proposing adjustments for the 1979,

In 1991, the IRS made assessments totaling $140,297 against Green for the income he failed to report on his 1979, 1980 and 1981 tax returns. Green has not challenged the accuracy of these assessments. A federal tax lien exists against all of a taxpayer's property on the date of the assessment if that assessment is not paid. 26 U.S.C. S 6321, 6322 (1989); see United States v. Vermont, 377 U.S. 351, 352 n.1 (1964). Assessments are presumed to be valid, and establish a prima facie case of liability against a taxpayer. United States v. Vespe, 868 F.2d 1328, 1331 (3d Cir. 1989). Thus, by dint of its 1991 assessments against Green, the federal government had obtained a lien against all of his property, including the Huntingdon Valley property. Green, however, refused to pay the assessments, and in 1992 the IRS recorded a notice of lien against him. Green claims the government has no lien against the Huntingdon Valley property because he conveyed it to Mary and himself as tenants by the entirety in 1981. Courts look to state law to determine what rights a taxpayer has in the property the government seeks to reach. See Drye v. United States, 120 S. Ct. 474, 478 (1999). Under Pennsylvania law, property owned by tenants by the entirety is not subject to the debts of either spouse. See Stauffer v. Stauffer, 465 Pa. 558, 576 (1976).

The government responds, and the district court agreed, that the conveyance was fraudulent and should be set aside under the actual fraud provisions of the Pennsylvania Uniform Fraudulent Conveyances Act (PUFCA). See  39 Pa.

_____

1980 and 1981 tax years. He wrote a letter to the IRS contesting the adjustments. The next day, he granted a $300,000 mortgage on his residence to Roylan Finance Company. Howard had created Roylan, and installed Mary's mother, Ernestine Woodmansee, as its sole owner. Ernestine did not pay $300,000 for the mortgage, which was allegedly given in exchange for Ernestine's parental support to Mary over the years. In 1989, Howard and Mary executed a UCC-1financing statement that gave Roylan a security interest in all of their personal property. Lower Ct. Op. at 6. The statement was filed just two months before a judgment was entered against Howard in the Kranzdorf lawsuit. The trial court found as a matter of fact that the financing statement was filed in anticipation of this debt arising.

Stat. Ann. S 357 (1993) (repealed 1994).2 The trial court stated that actual fraud is presumed where a husband transfers property to a wife for inadequate consideration, and that the presumption may be rebutted by a showing that the conveyance was fair. Lower Ct. Op. at 9. The trial judge stated that any evidence of Green's solvency was "irrelevant" to the presumption of actual fraud. Id. at 9 n.7. Green disagrees, arguing that solvency is relevant as "evidence that the transfer was proper and not fraudulent." Appellant's Br. at 5. Specifically, Green contends that under Pennsylvania law, evidence of solvency conclusively rebuts the presumption of actual fraud. Appellant's Br. at 4.

II. Analysis

We review the district court's findings of fact under the clearly erroneous standard. See Moody v. Sec. Pacific Bus. Credit Inc., 971 F.2d 1056, 1063 (3d Cir. 1992). We exercise plenary review of the trial court's legal interpretation and construction of PUFCA. See id. In doing so, we are bound by Pennsylvania law. See id. Thus, our task is to determine whether, by deeming evidence of solvency "irrelevant," the trial court substantially misstated Pennsylvania law on the weight to be given solvency in the actual fraud analysis of interspousal transfers. Among Pennsylvania jurists there have been confusing cross-currents on this question, as we shall see. But the most recent statement of Pennsylvania law grounds the presumption in the inadequacy of consideration, and minimizes any consideration of solvency. The trial judge therefore correctly interpreted and applied that law to this case.

PUFCA, like most fraudulent conveyance statutes, recognizes two distinct types of fraud: actual fraud and constructive fraud. Historically, fraudulent transfer law "addressed transactions in which the debtor, by engaging in a transaction, had a specific intent to prevent or interfere

_____

2. Pennsylvania replaced the Uniform Fraudulent Conveyances Act with the Uniform Fraudulent Transfers Act in 1994. However, PUFCA is still applicable to transfers that occurred before the February 1, 1994 effective date of the new act, 12 Pa. C.S.A. S 5101 et seq. See United States v. Kudasik, 21 F. Supp. 2d 501, 506 n.2 (W.D. Pa. 1998).

5

improperly with collection efforts in order to retain some benefit for the debtor." Barry L. Zaretsky, Fraudulent Transfer Law as the Arbiter of Unreasonable Risk, 46 S.C. L. Rev. 1165, 1165 (1995) (emphasis added). However, because courts recognized "the difficulty of proving a transferor's specific intent, [they] developed principles of constructive fraud under which a transaction might be avoidable as fraudulent even in the absence of a showing of actual intent to hinder, delay, or defraud." Id. (emphasis added). Thus, the two bodies of fraudulent transfer law taken together provide that the debtor "may not dispose of his property with the intent (actual fraud) or the effect (constructive fraud) of placing it beyond the reach of creditors." COUNTRYMAN, CASES AND MATERIALS ON DEBTOR AND CREDITOR 127 (2d ed. 1971) (parenthetical phrases added).

PUFCA defines and proscribes actual fraud as follows: "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." 39 Pa. Stat. Ann. S 357 (1993).

A. Interspousal Presumption of Actual Fraud

In most actual fraud cases, insolvency is one of several relevant factors or "badges of fraud" the court may consider as evidence of fraudulent intent. See Sheffit v. Koff, 175 Pa. Super. 37, 42 (1953). As early as 1939, however, the Pennsylvania Supreme Court recognized a situation in which solvency was not relevant to the actual fraud inquiry: property transfers between husbands and wives for nominal consideration. See Iscovitz v. Filderman, 334 Pa. 585, 589 (Pa. 1939). In that situation, the court stated, the transfer itself was sufficient to create a presumption of fraud, and only a showing of fair consideration could successfully rebut the presumption. See id. "Where the transaction is between husband and wife actual intent does appear where it is shown that there was a deed given for a nominal consideration. This is but a presumption of fact and places on the wife the burden of showing the fairness of the transaction." Iscovitz, 334 Pa. at 589. Moreover, because "family collusion by a debtor is so easy to execute and so difficult to prove, the evidence to sustain the claim of the

6

wife in such cases must be clear and satisfactory." Id. at 589–90. Thus, in cases of interspousal transfer, whether there is a factual presumption of actual intent to defraud depends on whether there is adequate consideration for the transfer. The principle has been restated and applied numerous times in the past sixty years. See, e.g., County of Butler v. Brocker, 455 Pa. 343, 347–48 (1974); United States v. Klayman, 736 F. Supp. 647, 648 (E.D. Pa. 1990); United States v. Kudasik, 21 F. Supp.2d 501, 507 (W.D. Pa. 1998). This Court recently discussed the continuation of the principle under Pennsylvania's new fraudulent transfer statute. See In re Blatstein, 192 F.3d 88, 97–98 (3d Cir. 1999). Blatstein also highlights the more significant role solvency plays in constructive fraud, stating that under PUFCA's successor statute, when constructive fraud is at issue, the spouse may defeat the fraud claim by proving either fair consideration or solvency. See id. at 99.

The trial court here specifically stated that it was reviewing this transaction for actual fraud, not constructive fraud. Lower Ct. Op. at 9. The trial judge found as a matter of fact that the conveyance was between husband and wife, and found as a matter of fact that consideration for the conveyance was not fair. The Greens do not challenge either of these findings, and the evidence suggests they are quite correct. Thus, the judge correctly construed PUFCA and correctly determined that the facts gave rise to a presumption of actual fraud regardless of whether Howard was solvent.

B. Relevance of Solvency in Rebutting Presumption of Actual Fraud

Green contends that even if the trial court correctly applied the presumption, under Pennsylvania law he can wholly rebut it by presenting evidence of solvency. But in its most recent pronouncement on interspousal transfers and the application of the fraud presumption in actual fraud cases, the Pennsylvania Supreme Court grounded its analysis on the question of fair consideration. See County of Butler, 455 Pa. at 348. County of Butler minimized any significance of solvency in the analysis of interspousal transfers for inadequate consideration. See id. at 347–48. The trial court reviewing the Greens' predicament correctly

7

followed suit, as have other federal courts. See, e.g., Klayman, 736 F. Supp. at 648; Kudasik, 21 F. Supp. 2d at 507.

Resisting the implications of County of Butler, Green cites dictum from a 1957 case stating that a wife may rebut the presumption of actual fraud arising from an interspousal transfer alternatively by showing fair consideration or by showing "that the husband's liabilities did not exceed his then remaining assets." Smith v. Arrell, 388 Pa. 117, 118 (1957). Green's argument here is not frivolous, because Smith does illustrate that Pennsylvania courts have occasionally equivocated on the relationship between solvency and actual fraud in interspousal transfers. For instance, the court in Smith cited three cases to support its statement that solvency is a defense to the interspousal presumption of actual fraud. First, the court cited to Iscovitz, which mandated review of "the entire course of conduct of the grantor," including insolvency. Iscovitz, 334 Pa. at 589. But Iscovitz then directed that, if this review revealed a conveyance between husband and wife for nominal consideration, the court should presume actual intent to defraud, and dismiss the presumption only on a showing that the transaction was fair. Id. Second, the Smith court cited to People's Savings & Dime Bank & Trust Co. v. Scott to support the notion of a "solvency defense" to the interspousal presumption of actual fraud. 303 Pa. 294, 297 (1931). But People's Savings dealt with constructive fraud, and not actual fraud, so its application here is doubtful. Id. at 296. Finally, the Smith court cited to dicta in Queen–Favorite Building & Loan Ass'n v. Burstein, suggesting that a presumption of actual fraud arising from an interfamily transfer may be offset by evidence, conjointly, of fair consideration and solvency. See 310 Pa. 219, 223 (1933). But the outcome of Queen–Favorite did not turn on a showing of solvency, thus diminishing the authority of the language used in the opinion. Moreover, the Queen–Favorite court cited in support of its "solvency" language People's Savings and Shaver v. Mowry, 262 Pa. 381, 386 (Pa. 1918), both of which dealt with constructive fraud, a distinct legal concept in which solvency is relevant as a defense.

In short, Smith captures the vacillation of the Pennsylvania courts in seeking to evaluate the significance

of solvency to the presumption of interspousal fraud. Green's citation of Smith shrewdly highlights strands of Pennsylvania law that have suggested that solvency may be a defense to the presumption of interspousal fraud. But his effort fails here for two reasons. First, County of Butler overruled sub silentio the Smith dicta that Green cites. County of Butler stated that for purposes of actual fraud, a debtor "does not have to render himself insolvent. . . in order to establish a fraudulent intent. . . . [The creditor] need only show an intent to hinder, delay or defraud on the part of the [debtor] to make the conveyance fraudulent. Our cases have established the principle that as between husband and wife fraud is presumptively present when the conveyance is for a nominal consideration and is challenged by creditors . . . ." County of Butler, 455 Pa. at 347 (internal quotation and citations omitted). Put another way, a debtor may remain solvent and still face a presumption of actual fraud by making an interspousal transfer for nominal consideration. Further, Smith's congruence with the present case is questionable. In Smith, a wife who received a $25,000 judgment note from her husband after loaning him $10,000 protested application of the interspousal transfer presumption on the ground that she was still single at the time of the transaction. The Smith court mentioned in passing that solvency was a possible defense, but the debtor did not rely on it there and the court did not apply it. Thus, despite the existence of Smith, the trial judge did not err in following the teachings of County of Butler, the more recent and more analogous case. In light of County of Butler, the judge was certainly not incorrect to deem solvency substantially "irrelevant" in evaluating the presumption that Howard's transfer to Mary was fraudulent. The present facts are that the transfer was to a spouse for a wholly inadequate consideration. No matter how healthy Howard Green's balance sheet might have been, the factual presumption of actual fraud would survive. We therefore regard the trial court's assessment of Pennsylvania law as applied here to be substantially accurate. On the present facts, particularly where there is clear and convincing evidence of inadequate consideration, solvency is an inconsequential factor.

Under PUFCA, "[f]air consideration is given for property or obligation: (a) [w]hen, in exchange for such property or

obligation, as a fair equivalent therefor and in good faith, property is conveyed or an antecedent debt is satisfied; or (b) [w]hen such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained." 39 Pa. Stat. Ann. S 353 (1993). The trial court found as a matter of fact that Mary did not give fair consideration, and the Greens do not challenge this finding of fact. Thus, Mary did not successfully rebut the presumption of actual intent.

## C. The Presumption is in Accord with Subsequent Events

Moreover, the judge did not wear blinders in presuming that Howard acted with actual fraudulent intent. The court took account of the totality of the circumstances, an approach clearly endorsed by Godina v. Oswald, which states that "[s]ince fraud is usually denied, it must be inferred from all facts and circumstances surrounding the conveyance, including subsequent conduct." 206 Pa. Super. 51 (1965) (quoting Sheffit, 175 Pa. Super. at 41.). Howard's subsequent conduct included creating the Roylan Finance Company and installing Mary's mother as its owner solely for the purpose of granting a mortgage on the property, just days after contesting the IRS's claim for taxes owed. Subsequent conduct also involved granting Roylan a security interest in all of his personal property shortly before the $17 million judgment was entered against him in the bankruptcy trustee's lawsuit. These facts reinforce the trial court's ultimate conclusion that, all things considered, Howard's proffered evidence of solvency was "irrelevant" to the question of his intent to defraud creditors.

## D. Howard's Solvency

Finally, we note that despite his doggedness on this issue, Howard likely cannot prove that he was solvent as of April 13, 1981, the date he transferred the property to Mary. A person is insolvent under the Uniform Fraudulent Conveyance Act when "the present, fair, salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." 39 Pa. Stat. Ann. S 352(1) (1993). "Debts" are defined as "any legal liability whether matured

10

or unmatured, liquidated or unliquidated, absolute,fixed, or contingent." 39 Pa. Stat. Ann. S 351 (1993). The United States is considered a creditor "from the date when the obligation to pay income taxes accrues," essentially on April 15 of the year following the tax year in question. United States v. St. Mary, 334 F. Supp. 799, 803 (E.D. Pa. 1971). Further, the Pennsylvania Supreme Court has found that awareness of a probable legal action against a debtor amounts to a debt for purposes of determining solvency. See Baker v. Geist, 457 Pa. 73, 76-77 (1974).

As of April 15, 1980, Howard was in debt to the United States for the underreported amount of his 1979 federal income taxes, $51,845. And Howard transferred the property to Mary just two months after Fidelity filed for bankruptcy protection. It was this filing, and the appointment of a bankruptcy trustee, that led to the 1983 complaint against Howard and the eventual $17 million judgment against him. Thus, at the time Howard conveyed the property, he was on notice of a possible suit by the bankruptcy trustee. Howard could reasonably estimate that the tax debt and bankruptcy debt together would reach several million dollars. These looming debts, when compared with his "collapsing" portfolio, suggest that Howard was insolvent at the time of the transfer to Mary. So even if solvency were relevant to the question of actual fraud in this case -- we repeat that it is not -- Howard's arguments are still unavailing.

III. Conclusion

Evidence of solvency was not a barrier to applying the presumption of actual fraud arising from Howard's transfer of property to Mary for nominal consideration. Evidence of solvency would not have been enough to rebut that presumption once applied. Moreover, the evidence suggests that Howard was not solvent at the time of the transfer. Therefore, we AFFIRM the district court's interpretation of PUFCA, the presumption that the conveyance was fraudulent and the finding that the Greens did not rebut the presumption.

A True Copy:
Teste:

　　　Clerk of the United States Court of Appeals
　　　for the Third Circuit