RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2000 FED App. 0402P (6th Cir.)
File Name: 00a0402p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

SANDRA L. CRAFT,
        *Plaintiff-Appellee/*
        *Cross-Appellant,*

        *v.*

UNITED STATES OF AMERICA,
acting through the
Commissioner of Internal
Revenue,
        *Defendant-Appellant/*
        *Cross-Appellee.*

Nos. 99-1734/1737

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 93-00306—Gordon J. Quist, District Judge.

Argued: August 10, 2000

Decided and Filed: November 22, 2000

Before: KEITH, COLE, and GILMAN, Circuit Judges.

1

_____

**COUNSEL**

**ARGUED:** Joan I. Oppenheimer, U.S. DEPARTMENT OF JUSTICE, APPELLATE SECTION TAX DIVISION, Washington, D.C., for Appellant. Jeffrey Alan Moyer, DONOVAN, LOVE & TWINNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Joan I. Oppenheimer, David English Carmack, U.S. DEPARTMENT OF JUSTICE, APPELLATE SECTION TAX DIVISION, Washington, D.C., for Appellant. Jeffrey Alan Moyer, DONOVAN, LOVE & TWINNEY, Grand Rapids, Michigan, for Appellee.

COLE, J., delivered the opinion of the court, in which KEITH, J., joined. GILMAN, J. (pp. 30-35), delivered a separate opinion concurring in the judgment.

_____

**OPINION**

_____

R. GUY COLE, JR., Circuit Judge. This case is before us for the second time. In *Craft v. United States*, 140 F.3d 638 (6th Cir. 1998) (hereinafter, "*Craft I*"), we held that a federal tax lien against Plaintiff-Appellee Sandra L. Craft's now-deceased husband, Don, did not attach to property held by the couple in a "tenancy by the entirety" under Michigan law. On remand, the district court found that Defendant-Appellant the United States of America ("IRS," or "the government") was nonetheless entitled to $6,693 with which Don had fraudulently enhanced the entireties property. Now, the IRS appeals the district court's judgment on the basis that the *Craft I* panel misconstrued the law. Sandra responds that the IRS is precluded from raising this argument on appeal by the "law of the case" doctrine and other principles. Sandra also raises a number of claims in a cross-appeal. For the following reasons, we **DISMISS** the IRS's effort to overturn *Craft I* as precluded by both the law of the case doctrine and the rule that one panel of this court may not overrule the prior

statement squares with either reality or with Michigan law. As discussed above, Don Craft in fact possessed at the very least a contingent future interest under Michigan law and would have taken the entire estate in fee simple had he survived Sandra. *See Rogers v. Rogers*, 356 N.W.2d 288, 293 (Mich. Ct. App. 1984).

Furthermore, the court goes too far when it suggests that the IRS is arguing that "*Drye* stands for the proposition that a federal tax lien attaches to any right to inherit property, no matter how remote." Op. at 16. A key distinction between a tenancy by the entirety and a contingent expectancy is the latter's revocability. Although a hoped-for inheritance could be subject to the whims of an ailing, fickle relative, the rights associated with an entireties property are clearly irrevocable. Such was the case with the Berwyck property.

In sum, I believe that we are bound by the holding of *Craft I*, and I therefore concur in the result reached by the court. But I also believe that *Craft I* contravenes recent Supreme Court decisions and would therefore recommend that this case be revisited en banc.

The IRS argues, however, that the case of *Drye v. United States*, 120 S. Ct. 474 (1999), decided after *Craft I*, is a contrary, intervening Supreme Court decision. In that case, a delinquent taxpayer who was subject to a federal tax lien disclaimed any interest in his mother's estate after her death, causing the estate to pass to his daughter. Under the relevant state law, "such a disclaimer creates the legal fiction that the disclaimant predeceased the decedent," with the consequence that "[t]he disavowing heir's creditors . . . may not reach property thus disclaimed." *Id*. at 476. Nevertheless, the Supreme Court relied on *Irvine* and disregarded the legal fiction, holding that the taxpayer's interest in his mother's estate was a "right to property" subject to the federal tax lien.

Sandra Craft responds that *Drye* does not represent a change in the law, but is simply a reaffirmation and application of prior cases in this area. I agree. To the extent that *Drye* is inconsistent with *Craft I*—and I believe that it is—that inconsistency was considered, and rejected, by this court in *Craft I* in its discussion of *Irvine* and *National Bank of Commerce*. Although the IRS is technically correct that *Drye* is a "subsequent, contrary view of the law by a controlling authority," this formulation is incomplete. The purpose of the intervening-controlling-authority exception is to allow a subsequent panel of this court to respond to a new *precedent*, unavailable to the prior panel, not just a new *decision*. Otherwise, a loophole would exist under which a subsequent panel could freely revisit a decided issue simply by referencing a later Supreme Court decision that does nothing more than restate the existing precedent. "Were matters otherwise, the finality of our appellate decisions would yield to constant conflicts within the circuit." *LaShawn*, 87 F.3d at 1395 (examining the law-of-the-circuit doctrine).

I disagree, however, with the court's conclusion in Part II.A.2. that *"Craft I* is essentially consistent with the *Drye* Court's reasoning." Op. at 11. The court also asserts that "under Michigan law, Don had no individual interest in the entireties property." Op. at 14. I do not believe that this

decision of another panel. We **AFFIRM** the decision of the district court regarding Sandra's claims.

## I. BACKGROUND

The essential facts of the case are as follows.[1] In May 1972, Sandra Craft and her husband, Don, purchased real property (known as the "Berwyck Property," for the road on which it was located) in Michigan as tenants by the entirety. *Craft I*, 140 F.3d at 639. Don failed to file federal income tax returns for tax years 1979 through 1986, and, in July 1988, the IRS assessed $482,446.73 against him in unpaid tax liabilities. *Id.* Don failed to pay his tax debts, and the IRS filed a notice of federal tax lien in March 1989 against all of Don's property and rights to property. *Id.*; *see also* I.R.C. § 6321. Don was insolvent during the period from April 1980 through August 1989.

On August 28, 1989, Don and Sandra transferred the Berwyck Property to Sandra by way of a quitclaim deed, in exchange for one dollar. *Craft I*, 140 F.3d at 639. In June 1992, Sandra sold the property to a third party for $119,888.20. *Id.* at 640. Pursuant to an agreement between Sandra and the IRS, Sandra kept half of the proceeds ($59,944.10); the other half was placed in a non-interest-bearing escrow account, subject to the same right, title, and interest that the federal tax lien had on the property. *Id.* In April 1993, Sandra filed a complaint pursuant to 28 U.S.C. § 2410(a), seeking to quiet title to the proceeds in the escrow account. *Id.* In its answer, the government argued that it was entitled to half of the proceeds from Sandra's sale of the property because its lien attached to Don's interest in the Berwyck Property, even though Don and Sandra had held the property as tenants by the entirety. *Id.* The government also claimed that Don had fraudulently conveyed his interest in the property to Sandra. *Id.*

---

[1] *Craft I* contains a detailed factual and procedural background of this case. *See* 140 F.3d at 639-41.

Both parties moved for summary judgment in September 1993. The district court denied Sandra's motion and granted the government's motion in September 1994. *See id.* at 640. The district court held that at the time of the August 1989 conveyance, Don and Sandra's entireties estate terminated and each spouse took an equal half interest in the estate. *Id.* Accordingly, the district court held that the federal tax lien attached to Don's interest at that time. *Id.* Upon Sandra's motion, the court conducted further proceedings to determine the value of Don's interest at the time of the termination of the tenancy by the entirety. *See id.* After a telephonic hearing, the court found in October 1996 that the value of Don's property to which the IRS lien attached was $50,293.94.[2] *See id.* at 641. The court then ordered that the IRS receive that amount from the escrowed proceeds. *Id.*

On cross-appeals to this court, the *Craft I* panel reversed the district court's ruling, holding that "[b]ecause Michigan law does not recognize one spouse's separate interest in an entireties estate, a federal tax lien against one spouse cannot attach to property held by that spouse as an entireties estate." 140 F.3d at 643. The panel also held that, under Michigan law, "Don did not possess a separate future interest in the Berwyck Property; therefore, the federal tax lien could not attach to a future interest that did not exist under Michigan law." *Id.* at 644. After finding that Don had no present or future interest in the disputed property, the court remanded the case for determination of "whether a fraudulent conveyance occurred in this case." *Id.* at 644. Judge Ryan concurred in the majority's result, but argued that Don had a separate, future interest in the entireties property to which the tax lien might attach if the August 1989 transfer to Sandra were set aside as fraudulent. *See id.* at 649.

---

[2]The court reached the figure by dividing in half the difference between the fair market value of the property as of the date of the August 1989 transfer ($120,000) and the amount of the outstanding mortgage balance at the time ($19,412.12). *See Craft I*, 140 F.3d at 641.

In contravention of *Irvine*, the majority in *Craft I* failed to look past Michigan's characterization of an individual's interest in entireties property and ignored the substantial rights actually held by Don Craft, which similarly had undeniable value. In other words, I believe that the majority in *Craft I* was "struck blind" by Michigan's "legal fictions."

To my mind, then, *Craft I* reached the wrong result, and the IRS ought to have had the right to attach Don Craft's valuable interest in the tenancy by the entirety. Nevertheless, two related doctrines require that I concur with the result reached by the court. The first is the law-of-the-case doctrine, which provides that "[a]n earlier appellate court's decision [in the same case] as to a particular issue may not be revisited unless 'substantially new evidence has been introduced, . . . there has been an intervening change of law, or . . . the first decision was clearly erroneous and enforcement of its command would work substantial injustice.'" *United States v. Corrado*, 227 F.3d 528, 533 (6th Cir. 2000) (citation omitted). Second, the law-of-the-circuit doctrine provides that, absent an intervening change in the law, "a panel of this court may not overrule a previous panel's decision." *Meeks v. Illinois Cent. Gulf R.R.*, 738 F.2d 748, 751 (6th Cir. 1984).

*Craft I* is both the law of this case and the law of the circuit. Without delving into the precise differences between the two, suffice it to say that the law-of-the-circuit is the stronger of the two doctrines, and therefore provides the relevant test for whether *Craft I* can be revisited by this panel. *See LaShawn v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) ("While the law-of-the-case doctrine offers several exceptions. . . the law-of-the-circuit doctrine is much more exacting."). Under the law-of-the-circuit doctrine, a subsequent panel can only revisit an earlier panel's decision if there has been "a change in the substantive law or an intervening Supreme Court decision." *Smith v. U.S. Postal Service*, 766 F.2d 205, 207 (6th Cir. 1985). There has been no substantive change since *Craft I* to the relevant provisions of either Michigan property law or federal tax law.

possessed a contingent future interest, because he would have taken the entire estate in fee simple if Sandra had predeceased him. *See Rogers v. Rogers*, 356 N.W.2d 288, 293 (Mich. Ct. App. 1984) ("[E]ach spouse is considered to own the whole and, therefore, is entitled to the enjoyment of the entirety and to survivorship."). Finally, if the Crafts had divorced, they would have become tenants in common, and Don Craft would have had the right to bring an action for partition and sale. *See* MICH. COMP. LAWS § 552.102.

The fact that Don Craft could not have independently sold his share in the tenancy by the entirety does not alter the fact that his rights to the property had value. "Under the great weight of federal authority, . . . such restraints on alienation are not effective to prevent a federal tax lien from attaching under 26 U.S.C. § 6321." *Bank One Ohio Trust Co. v. United States*, 80 F.3d 173, 176 (6th Cir. 1996).

The majority in *Craft I* was aware of these rights, and acknowledged that "a federal tax lien can attach to a future or contingent interest in property." *Craft I*, 140 F.3d at 644. *Craft I* rejected the IRS's claim, however, on the ground that "state law determines the nature of the legal interest which a taxpayer has in a property," and "[i]n Michigan, it is well established that one spouse does not possess a separate interest in an entireties property." *Craft I*, 140 F.3d at 643-44.

I believe that the *Craft I* majority committed a subtle but critical error in accepting at face value Michigan's *description* of the property interests held by a tenant by the entirety, rather than looking past that description to the *actual substance* of those interests under Michigan law. In *Irvine*, the Supreme Court acknowledged that, under Minnesota law, a disclaimant is considered as if she never held any interest in the property whatsoever. *Irvine*, 511 U.S. at 239. Nevertheless, the Court looked past Minnesota's characterization of Irvine's property interest and held that the gift tax could attach because, in actuality, Irvine exercised control over the disposition of the property—a right that had unquestionable value. *Id*. at 240.

---

On remand, the district court conducted a bench trial. In written findings of fact and conclusions of law made in March 1999, the district court concluded that, although the transfer of the Berwyck Property to Sandra by quitclaim deed did not constitute a typical fraudulent conveyance under Michigan law, the government was entitled to relief under an exception to that law, *see McCaslin v. Schouten*, 292 N.W. 696, 699 (Mich. 1940). The court found that under the exception, a creditor may obtain relief "where the debtor, while insolvent, places non-exempt funds beyond the reach of his creditors by enhancing the entireties property." *See id*. The court reasoned that from 1980 through 1985, while he was insolvent, Don and Sandra had used Don's funds to enhance the property by making a total of $6,693 in mortgage payments (excluding interest) on its behalf. The court found that Don's actions constituted a type of fraudulent conveyance under Michigan law, and that the government was entitled to recover the value of the mortgage payments ($6,693) plus interest (from the date of the court's October 1995 judgment) from the escrowed sales proceeds.[3] Sandra filed a motion to amend the judgment, arguing that the court should reverse its award of interest on the $6,693 it awarded to the IRS. Sandra also moved the court to award *her* interest, pursuant to 28 U.S.C. § 2411, on the funds that the IRS would have to return to her.[4] The court granted Sandra's motion in part, deleting the interest awarded to the IRS, but denied her request for interest.

The government filed a timely notice of appeal and Sandra filed a timely notice of cross-appeal in June 1999. In October 1999, the government petitioned this court for en banc review

---

[3] The district court also rejected Sandra's theories to bar the government's relief. Sandra raises many of these theories on appeal, and we discuss them *infra*.

[4] The IRS was in possession of $50,293.94 of escrowed funds that the district court had awarded it in October 1995. Sandra was seeking interest on the $43,600.94 that the IRS would be returning to her (*i.e.*, 50,293.94 less $6,693).

of the *Craft I* decision. The government argued that the *Craft I* decision -- as well *Cole v. Cardoza*, 441 F.2d 1337 (6th Cir. 1971) (holding that federal government may not, under Michigan law, attach lien to entireties property to satisfy individual tax liability of one spouse), a prior decision upon which the *Craft I* court relied -- conflicted with established, controlling precedent. This court rejected the petition in December 1999.

## II.  THE GOVERNMENT'S APPEAL

At this juncture, this case is not really about federal tax liens. Nor is it about state law property rights. This case is about the extent to which a prior decision of this court binds a subsequent panel when neither the facts, the parties, nor the law has changed. On appeal, the IRS reasserts its argument that a § 6321 federal tax lien against an individual taxpayer attaches to a tenancy by the entirety that the taxpayer shares, pursuant to Michigan law, with his spouse. This is, of course, the very argument we rejected in *Craft I*. For the reasons that follow, the government is precluded from re-arguing its case at this time.

### A.  Law of the Case

Under the law of the case doctrine, a court ought not reopen issues decided at an earlier point in the same litigation. *See Agostini v. Felton*, 521 U.S. 203, 236 (1997). "Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case." *Hanover Ins. Co. v. American Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (citation and quotation marks omitted). Although the doctrine of law of the case is "not an inexorable command," and courts must use "common sense" in applying it, *see id.*, the power of this court to reach a result inconsistent with a prior decision reached in the same case is "to be exercised very sparingly, and only under extraordinary conditions." *General Am. Life Ins. Co. v. Anderson*, 156 F.2d 615, 619 (6th Cir. 1946) (citation and quotation marks omitted). We have delineated three such extraordinary conditions in which we will reconsider a prior ruling in the

tax laws are concerned. *See United States v. Irvine*, 511 U.S. 224, 240 (1994). The *Irvine* Court considered whether the federal gift tax applied to a transfer that occurred when a mother disclaimed her interest in a trust, thereby allowing that interest to pass to her children. Upon the termination of a trust established by her grandfather, Sally Irvine became entitled to a share of the trust principal. She disclaimed part of her share, effectively transferring that part to her children. Under Minnesota law, "an effective disclaimer of a testamentary gift is generally treated as relating back to the moment of the original transfer of the interest being disclaimed, having the effect of canceling the transfer to the disclaimant *ab initio* and substituting a single transfer from the original donor to the beneficiary of the disclaimer." *Id*. at 239. Thus, the share that Irvine's children received was considered by Minnesota law as if it had never been possessed by Irvine, but rather as if it had been transferred directly from the trust to Irvine's children.

Nevertheless, the Supreme Court held that Irvine's disclaimer in favor of her children was taxable, declaring that "the federal gift tax is not struck blind by a disclaimer." *Id*. at 240. In other words, for federal tax purposes, the key inquiry is what rights an individual actually possesses under state law, not how the state characterizes those rights. *See id.*; *see also Drye v. United States*, 120 S. Ct. 474, 482 n.5 (1999) ("[I]t is not material that the economic benefit to which the [taxpayer's local law property] right pertains is not characterized as 'property' by local law." (quoting W. PLUMB, FEDERAL TAX LIENS 27 (3d ed. 1972) (alterations in original))).

The appropriate inquiry, then, as stated by Judge Ryan in *Craft I*, is "what state-defined rights, if any, did Don Craft have in the Berwyck property?" *Craft I*, 140 F.3d 638, 645 (Ryan, J., concurring). First, Don Craft had the right to enter and enjoy the property to the exclusion of all others, except for Sandra Craft. *See* MICH. COMP. LAWS § 557.71. If the Crafts had decided to rent or sell the property, Don Craft would have received half of the proceeds. *See id*. He further

—————————

## CONCURRENCE

—————————

RONALD LEE GILMAN, Circuit Judge, concurring in the judgment. Because I agree that we are bound by *Craft I* for the reasons that are well stated in the court's opinion, I concur in the judgment. I also fully concur in the court's disposition of Sandra Craft's cross-appeal. Nevertheless, I believe that the result reached in *Craft I*, and that this court endorses today, is inconsistent with Supreme Court precedent and should be reversed. I therefore write separately to identify the bases for my disagreement with *Craft I* and to recommend that this case be revisited en banc.

As Judge Ryan pointed out in his dissent in *Craft I*, the legal landscape has changed considerably since 1971, when this court held in *Cole v. Cardoza*, 441 F.2d 1337, 1343 (6th Cir. 1971), that a federal tax lien against an individual taxpayer cannot attach to property held by that taxpayer as a tenant by the entirety. In the interim, the Supreme Court has made clear that the IRS's power under 26 U.S.C. § 6321 to attach the individual property rights of a delinquent taxpayer is extensive, if not plenary. *See United States v. National Bank of Commerce*, 472 U.S. 713, 719-20 (1985) (holding that § 6321 "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have"); *Jewett v. Commissioner of Internal Revenue*, 455 U.S. 305, 309 (1982) (concluding that Congress intended federal tax liens to attach to "every species of right or interest protected by law and having an exchangeable value" (citation and internal quotation marks omitted)). Although state property law determines what rights to property a person enjoys, federal law dictates whether a tax lien may attach to those rights. *See National Bank of Commerce*, 472 U.S. at 722, 727.

In the years since *Cole,* the Supreme Court has held that state law "legal fictions" will be ignored insofar as the federal

same case: "(1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice." *Hanover Ins. Co.*, 105 F.3d at 312. For the reasons that follow, the IRS fails to articulate the "extraordinary conditions" necessary for us to rehear the claims we have already rejected.

### 1. Clearly Erroneous and Manifest Injustice

The IRS looks first to the third exception, arguing that this court can revisit the issues decided by the *Craft I* panel because that panel's decision was clearly erroneous and would work a manifest injustice.[5] The government's argument is not persuasive because *Craft I* was not clearly erroneous.

The *Craft I* panel had before it circuit precedent that squarely addressed the issue before the court. In *Cole*, this court held that a federal tax lien against a taxpayer did not attach to property owned by the taxpayer and his wife in a tenancy by the entirety. *See* 441 F.2d at 1343. Neither this court nor the Supreme Court has ever expressly overruled *Cole*. Nonetheless, the IRS contends that *Cole* has been effectively overruled by Supreme Court decisions subsequent to it. But no Supreme Court case has directly addressed the question before both the *Cole* and *Craft I* courts.[6] It is true that the Court has addressed the power of a federal tax lien to

—————————

[5] The IRS points to *General Am. Life Ins. Co.* as an example of a case in which this court reconsidered its prior holding at a later stage in the same case. *See* 156 F.2d at 618-21. We do not dispute that we have the power to reach a result different from one reached earlier in the litigation; the government, however, has not met its burden in the instant case of showing the "extraordinary conditions" that will permit us to do so. *See id.* at 619.

[6] All of the cases to which the IRS cites for its contention that *Cole* has been overruled were before the *Craft I* panel save *Drye v. United States*, 120 S. Ct. 474 (1999), which we discuss *infra*.

attach to state law property constructs other than a tenancy by the entirety, but the Court has done so only on narrow grounds. For instance, in *United States v. National Bank of Commerce*, 472 U.S. 713 (1985), the Court held that the IRS had a right to levy upon a joint bank account for delinquent federal income taxes owed by only one of the owners of the account. *See id.* at 715, 724. After discussing the specific characteristics of the taxpayer's rights under state law and under his contract with the bank, *see id.* at 723-24, the Court was crystal clear about the specificity of its holding:

> We stress the narrow nature of our holding. By finding that the right to withdraw funds from a joint bank account is a right to property subject to administrative levy under § 6331, we express no opinion concerning the federal characterization of other kinds of state-law created forms of joint ownership. This case concerns the right to levy only upon joint bank accounts.

*Id.* at 726 n.10.[7] Likewise, in *United States v. Rodgers*, 461 U.S. 677 (1983), the Court held that I.R.C. § 7403 permits a district court to order the sale of a delinquent taxpayer's home, despite the fact that his wife, with whom he owned the home pursuant to a state homestead law, did not owe any of the indebtedness. *See id.* at 680. As the *Craft I* panel noted, however, the *Rodgers* Court "recognized that tenancies by the entirety posed a problem distinct from that of homestead estates, in that neither spouse owns an independent interest in an entireties property while both spouses own independent interests in a homestead estate." 140 F.3d at 643 (citing *Rodgers*, 461 U.S. at 702-03 n.31). Thus, as the *Craft I* panel

---

[7]Indeed, the Third Circuit has stated that, "in *National Bank of Commerce* the Supreme Court acknowledged that if money is held by a husband and wife in a joint bank account as *tenants by the entireties* under applicable state law 'the Government could not use the money in the account to satisfy the tax obligations of one spouse.'" *Internal Revenue Serv. v. Gaster*, 42 F.3d 787, 791 (3d Cir. 1994) (citing *National Bank of Commerce*, 472 U.S. at 729 n.11) (internal footnote omitted; emphasis added).

discuss whether § 7430 applies to her case. Accordingly, we reject her motion for costs.[23]

## IV. CONCLUSION

For the reasons discussed above, we **DISMISS** the government's appeal as precluded by both the law of the case and law of the circuit doctrines. We further **AFFIRM** the district court's judgment, and **DENY** Sandra's motion for litigation costs brought pursuant to Rule 38 and 28 U.S.C. § 2412.

---

[23]The motion also sought dismissal of the government's appeal. We **DENY** Sandra's motion in its entirety.

If a court of appeals determines that an appeal is frivolous, it may after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

In *Martin v. CIR*, this court warned litigants of our "ample authority" to assess double costs and "just damages" against an appellant in a frivolous appeal: "In future such cases this court will not hesitate to award damages when the appeal is frivolous, or taken merely for purposes of delay, involving an issue or issues already clearly resolved." 756 F.2d 38, 41 (6th Cir. 1985) (quotation marks omitted); *accord Sisemore v. United States*, 797 F.2d 268, 271 (6th Cir. 1986); *Wilton Corp. v. Ashland Castings Corp.*, 188 F.3d 670, 676 (6th Cir. 1999). Recently, this court concluded that even though an appeal is not made in "bad faith," an appellee may garner costs if an appeal is "wholly without merit." *Wilton Corp.*, 188 F.3d at 677. Although the IRS's appeal is precluded by both the law of the case and law of the circuit doctrines, we have acknowledged that the government raised colorable – if not persuasive -- arguments in its appeal, *see supra*. Accordingly, we deny Sandra's motion for costs pursuant to Rule 38.

We also deny Sandra's motion for costs pursuant to § 2412. Sandra has failed to articulate why she merits costs pursuant to that statute. Rather, she simply reasserts her argument that the government's appeal is precluded at this time. Further, certain monetary awards in tax cases may be awarded only pursuant to I.R.C. § 7430. *See* 28 U.S.C. § 2412(e); *see also Sisemore*, 797 F.2d at 271. The provisions of § 7430 are "not automatic," and "are limited by a whole host of conditions and requirements." *Beaty v. United States*, 937 F.2d 288, 292 (6th Cir. 1991). Sandra has articulated none of these conditions or requirements, and, indeed, has failed even to

was presented with no binding precedent that overruled *Cole*, we cannot say that its decision was clearly erroneous.[8]

In finding that our decision in *Craft I* was not clearly erroneous, we acknowledge that there are colorable arguments on both sides of the question whether a federal tax lien against a taxpayer's "property" or "rights to property," *see* I.R.C. § 6321, attaches to a tenancy by the entirety. Indeed, Judge Ryan's concurrence in *Craft I* illustrates this point, *see* 140 F.3d at 645-49 (Ryan, J., concurring) (arguing that, if transfer of property to Sandra Craft were to be set aside, federal tax lien would attach to Don Craft's "future interest" in Berwyck property), as does Judge Gilman's separate concurrence in the instant appeal. We further recognize that this court has held that federal law supersedes state property law in other circumstances. *See, e.g., Bank One Ohio Trust Co., N.A. v. United States*, 80 F.3d 173, 176 (6th Cir. 1996) (finding that restraint on alienation created by state law does not prevent federal lien from attaching to spendthrift trust under § 6321); *Grosslight v. Liberty State Bank and Trust (In re Grosslight)*, 757 F.2d 773, 775 (6th Cir. 1985) (finding that property held as tenancy by the entirety is part of bankruptcy estate). But the fact that colorable arguments exist on both sides of a particular issue does not imply that the *Craft I* panel's decision is "clearly erroneous." There are colorable arguments in virtually every case we hear. To hold that their existence in the present case permits us to reopen an issue we have already settled in this very case would destroy the concept of finality in our courts, negate the predictability our legal system provides to people in the conduct of their affairs, and risk the unjust results that would surely follow were

---

[8] Nor do *Cole* and *Craft I* stand alone. As the *Craft I* panel noted, this court reiterated the rule of *Cole* in subsequent cases. *See* 140 F.3d at 642 (citing *United States v. Certain Real Property Located at 2525 Leroy Lane* ("*Leroy Lane I*"), 910 F.2d 343, 351 (6th Cir. 1990)); *id.* (citing *United States v. Certain Real Property Located at 2525 Leroy Lane* ("*Leroy Lane II*"), 972 F.2d 136, 138 (6th Cir. 1992)); *see also Gaster*, 42 F.3d at 791 n.3, 793 (holding that IRS may not levy against bank account of delinquent taxpayer held in tenancy by the entirety where taxpayer did not have unilateral right to withdraw funds).

litigants to "panel-shop" and pursue, willy-nilly, two or more bites at the apple of settled law.

The *Craft I* panel was bound by circuit precedent that was directly on point in reaching the conclusion it reached.[9]  It was faced with no Supreme Court precedent that directly held otherwise, and this court has reiterated the holding relied upon by the *Craft I* panel on more than one occasion.  Further, other courts have reached results consistent with that reached by the *Craft I* panel.  For these reasons, we reject the IRS's argument that the decision reached by the *Craft I* panel was "clearly erroneous."[10]

### 2.  Subsequent Contrary View of the Law

The IRS also argues that the law of the case doctrine does not apply here because the Supreme Court's recent decision in *Drye v. United States*, 120 S. Ct. 474 (1999), decided after *Craft I*, states a view of the law that is contrary to that expressed in *Craft I*.  *See Hanover Ins. Co.*, 105 F.3d at 312.  In *Drye*, the Court held that a taxpayer could not defeat a federal tax lien by disclaiming, pursuant to state law, his interest in his mother's estate.  120 S. Ct. at 478.  The IRS argues that *Craft I* conflicts with the *Drye* Court's statements that:  1) federal law determines whether a right or interest created under state law constitutes "property" or "rights to property" for purposes of the federal tax lien statute, *see Drye*, 120 S. Ct. at 481; and 2) state law legal fictions do not bind

---

[9] As the concurrence acknowledges, the law-of-the-circuit doctrine prohibits a subsequent panel of this court from revisiting an earlier panel's decision when there has not been a change in the substantive law or an intervening Supreme Court decision.  Inasmuch as the rule of *Cole v. Cardoza* remained good law, the *Craft I* panel was bound to follow it.

[10] Because the third exception to the law of the case doctrine requires a finding that a prior decision was both clearly erroneous *and* that it would work a manifest injustice, *see Hanover Ins. Co.*, 105 F.3d at 312, our holding that *Craft I* is not clearly erroneous makes it unnecessary for us to address the question of whether that decision will work a manifest injustice.

cited § 2411 as one of several examples of Congress expressly waiving the government's immunity with respect to interest awards, describing § 2411 in a parenthetical as "expressly authorizing prejudgment and postjudgment interest payable by the United States in tax-refund cases."  *Shaw*, 478 U.S. at 318-19 n.6.  This parenthetical description of a statute, contained in a footnote within dicta, is not dispositive of the meaning of § 2411.

The language of § 2411 is broad.  *Cf. Jones v. Liberty Glass Co.*, 332 U.S. 524, 531 (1948).  Sandra, however, has not met her burden of proof on the interest claim.  The only case she cites in support of her theory is *Steiner v. Nelson*, 199 F. Supp. 441 (E.D. Wis. 1961), *aff'd*, 309 F.2d 19 (7th Cir. 1962).  In *Steiner*, the court held that even where the IRS obtains funds from a taxpayer based on an illegal tax assessment, the taxpayer is *not* entitled to interest under § 2411.  *See* 199 F. Supp. at 441-42.  Thus, as the government notes, *Steiner* actually lends support to *its* position.  Although we are not bound by the reasoning or result of the *Steiner* court, we hold that, on the facts of this case, Sandra has failed to carry her burden of proving her case pursuant to § 2411.

### E.

In June of this year, Sandra filed a motion with this court to recover litigation costs pursuant to either the Equal Access to Justice Act, 28 U.S.C. § 2412, or under Fed. R. App. P. 38.  The panel deferred ruling on the motion until oral argument.  In the motion, Sandra argues that the government's appeal simply asserts the same issue, arguments, and case law rejected by the *Craft I* panel.  Because the government is bound by the law of the case doctrine, Sandra claims its appeal is brought in bad faith.  The government responds that Sandra should be denied costs because it was substantially justified in bringing its appeal, *see* I.R.C. § 7430, and because its appeal is not frivolous, as required by Rule 38.

Fed. R. App. P. 38.  That rule provides:

the district court's interpretation of § 2411. *See State of Mich. v. United States*, 141 F.3d 662, 664 (6th Cir. 1998).

Sandra asserts that § 2411 applies to her case because the funds she will recover constitute an overpayment, and because she will recover them pursuant to a court judgment. The IRS responds that a plaintiff may not collect interest against the federal government unless it has specifically waived its sovereign immunity, and § 2411 contains no such waiver for suits to quiet title. In addition, the IRS argues that the funds Sandra will receive are not an "overpayment" of taxes. *See* 28 U.S.C. § 2411.

A plaintiff may not recover interest from the federal government in the absence of an express waiver of its sovereign immunity from suit. *See Library of Congress v. Shaw*, 478 U.S. 310, 314 (1986). In determining whether Congress has expressly waived the government's immunity, a court must "construe waivers strictly in favor of the sovereign, and not enlarge the waiver beyond what the language requires." *Id.* at 318 (citations and quotation marks omitted). As the *Shaw* Court noted, Congress has expressly authorized interest claims against the government in the circumstances described by § 2411. *See id.* at 318-19 n.6. Because § 2411 authorizes payment of interest based upon "any judgment of any court rendered . . . for any overpayment in respect of any internal-revenue tax," the question in this case becomes whether the escrowed $43,600.94 held by the IRS constitutes an "overpayment" with respect to an internal-revenue tax. *See* 28 U.S.C. § 2411.

As did the district court, the government relies on *Spawn* to suggest that an "overpayment" refers only to tax refunds. *See* 989 F.2d 830. The *Spawn* court stated that § 2411 "expressly authorizes awards of prejudgment and postjudgment interest against the United States in tax refund cases." *Id.* at 834. But the court made this statement only in passing -- *Spawn* was not a tax case -- and lifted it directly from the Supreme Court's description of § 2411 in *Shaw*. *See id.* (citing *Shaw*, 478 U.S. at 318-19 n.6). In *Shaw*, the Supreme Court simply

the federal government for purposes of the federal tax lien statute, *see Drye*, 120 S. Ct. at 482. At oral argument, the IRS added that *Drye* stands for the "new" legal rule that a federal tax lien attaches to a taxpayer's right to inherit property. Upon careful review, we find that *Craft I* is essentially consistent with the *Drye* Court's reasoning.

### a.

In *Drye*, the taxpayer (Drye) was insolvent, and the IRS had obtained valid tax liens against all of his "property and rights to property" pursuant to I.R.C. § 6321.[11] *Id.* at 479. Drye's mother died, and Drye was sole heir to her $233,000 estate. *Id.* at 478. Drye "disclaimed" all his interests in his mother's estate pursuant to state law; as a result, the estate passed to Drye's daughter. *Id.* at 479. Drye's daughter established a spendthrift trust with the proceeds of her grandmother's estate, naming as beneficiaries herself, Drye, and her mother. *Id.* Although applicable state law provided that the assets of a spendthrift trust were shielded from creditors seeking to satisfy debts of the trust's beneficiaries, *see id.*, the Court held that Drye's disclaimer did not defeat the government's tax liens. *Id.* at 478. The Court summarized the relationship between § 6321 and state law as follows:

> The Internal Revenue Code's prescriptions are most sensibly read to look to state law for delineation of the taxpayer's rights or interests, but to leave to federal law the determination whether those rights or interests constitute "property" or "rights to property" within the meaning of § 6321. "[O]nce it has been determined that

---

[11] I.R.C. § 6321 provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

state law creates sufficient interests in the [taxpayer] to satisfy the requirements of [the federal tax lien provision], state law is inoperative to prevent the attachment of liens created by federal statutes in favor of the United States."

*Id.* at 478 (quoting *United States v. Bess*, 357 U.S. 51, 56-57 (1958) (brackets in original)). Under the approach taken in *Drye*, "We look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of federal tax lien legislation." *Id.* at 481.

The IRS argues that the *Craft I* panel failed to apply this rule and relied instead on Michigan law to determine whether a taxpayer's involvement in a tenancy by the entirety constitutes property for the purposes of § 6321. We are not persuaded. First, we note that the Supreme Court had stated prior to *Drye* the rule that a court must look to federal law to determine whether something constitutes "property" or "rights to property" for purposes of § 6321. *See, e.g., United States v. Irvine*, 511 U.S. 224, 238 (1994) (noting the "general and longstanding rule in federal tax cases that although state law creates legal interests and rights in property, federal law determines whether and to what extent those interests will be taxed"); *National Bank of Commerce*, 472 U.S. at 727 (stating that, "[t]he question whether a state-law right constitutes 'property' or 'rights to property' is a matter of federal law" for purposes of federal tax collection).[12] The *Craft I* court

---

[12]This precise nature of this rule appears to have wavered over time. *Compare Aquilino v. United States*, 363 U.S. 509, 514 (1960) (discussing the "application of state law in ascertaining the taxpayer's property rights" in determining whether property is subject to federal tax lien) *with National Bank of Commerce*, 472 U.S. at 727. Regardless of which formulation of the rule is adopted, the key point is that the federal question -- *i.e.*, whether a state-law right constitutes "property" or "rights to property" under the statute -- cannot be considered independently from the state-law question -- *i.e.*, what is the nature and extent of the state-law

**D.**

On October 26, 1995, the district court ordered that the government receive $50,293.94 of the escrowed proceeds from the sale of the Berwyck Property. Subsequent to this court's remand, the district court determined that the government was entitled to only $6,693 from the escrowed sales proceeds. Sandra argues that, pursuant to 28 U.S.C. § 2411, she is entitled to interest on the $43,600.94 (*i.e.,* $50,293.94 less $6,693) that the government has possessed since October 1995.

Section 2411 provides as follows:

In any judgment of any court rendered (whether against the United States, a collector or deputy collector of internal revenue, a former collector or deputy collector, or the personal representative in case of death) for any overpayment in respect of any internal-revenue tax, interest shall be allowed at the overpayment rate established under section 6621 of the Internal Revenue Code of 1986 upon the amount of the overpayment, from the date of the payment or collection thereof to a date preceding the date of the refund check by not more than thirty days, such date to be determined by the Commissioner of Internal Revenue.

28 U.S.C. § 2411. Citing *Spawn v. Western Bank-Westheimer*, 989 F.2d 830, 834 (5th Cir. 1993), the district court denied Sandra's motion for an award of interest on the basis that "[§ 2411] applies only to tax refund cases." The court reasoned that the statute's use of the terms "overpayment" and "payment" indicates that it was intended to apply only in cases where the taxpayer has paid a disputed tax liability and then seeks a refund. Because Sandra brought the instant case as an action to quiet title rather than as a tax refund case, and because the government obtained Sandra's funds pursuant to a court judgment rather than by virtue of an overpayment or payment of tax obligations, the court rejected Sandra's request for interest payments. We review de novo

the same extent that the lien attached to the property itself;[22] once this court found that the tax lien did not attach to the property, *see Craft I*, 140 F.3d at 643-44, the lien attached to nothing and the IRS had nothing to enforce. In the alternative, Sandra asserts that the *Craft I* holding requires that the government's lien against the property was unenforceable until either Don and Sandra died, or until the couple divorced. *See Leroy Lane II*, 972 F.2d at 138. Under Sandra's theory, the proceeds of the sale of the entireties property revert to Sandra upon Don's death, and the IRS cannot reach them. These theories fail.

We review questions of mootness de novo. *See Comer v. Cisneros*, 37 F.3d 775, 787 (2d Cir.1994). By operation of law, the IRS's lien attached to all of Don's property and rights to property. *See* I.R.C. § 6321. Although this court found that Don had no individual interest -- present or future -- in the entireties property, *see Craft I*, 140 F.3d at 643-44, the IRS did not gain recovery upon a theory that Don had an individual interest in the entireties property. Rather, the district court found that the IRS could recover the value of mortgage payments Don made on behalf of the entireties property under a fraudulent enhancement theory. In other words, Don essentially hid funds to which the IRS was entitled (by virtue of its lien) by investing them in a property to which the lien could not attach. *See McCaslin*, 292 N.W. at 699; *accord Elkins v. Suttorp (In re Elkins)*, 94 B.R. 932, 934-35 (Bankr. W.D. Mich. 1988). Thus, Sandra's arguments, which presume that the district court awarded the IRS proceeds of the sale of the property on the basis that Don had some kind of individual interest in the Berwyck Property, are misplaced. Rather, the court awarded the IRS's remedy on the basis that Don used his own funds to enhance the property in order to avoid paying his tax debts.

---

[22]The government disputes the stipulation to which Sandra refers, arguing that it agreed to release of the proceeds upon "resolution of the tax lien dispute." The exact nature of the stipulation is not clear from the record, but that does not impede our resolution of the issue. *See infra.*

was aware of that rule, *see* 140 F.3d at 641, and, more important, applied it properly.[13]

The *Craft I* court's analysis is consistent with the two-step analysis described in *Drye*. *See* 120 S. Ct. at 481. The *Craft I* court first looked to Michigan law and found that: 1) Michigan law holds that an individual spouse possesses no separate interest in entireties property, *Craft I*, 140 F.3d at 643, and 2) Michigan law holds that an individual spouse possesses no future interest in entireties property, *see id.* at 644.[14] Thus, under Michigan law, Don had no individual

---

right. When, as in this case, state law provides that there can be no individual interest in property held in a tenancy by the entireties, there is nothing which can be deemed "property" or "rights to property" under federal law. This understanding of § 6321 does not reflect a failure on the part of the *Craft I* majority to put substance over form, as the concurrence charges, but rather comports with the long-established principle that "federal law creates no property rights but merely attaches consequences . . . to rights created under state law." *Bess*, 357 U.S. at 55 (1958).

[13]The IRS attacks the court's statement that, "state law governs the issue of whether any property interests exist in the first place," *Craft I*, 140 F.3d at 643 (citing *Rodgers*, 461 U.S. at 683), as being inconsistent with *Drye*. As did the Supreme Court in *Drye*, we note that, upon careful review, some of the language we used in *Craft I* was not "phrased so meticulously" as we would have liked. *See Drye*, 120 S.Ct. at 481. We do not, however, read the sentence of which the IRS complains nor the approach taken in *Craft I* to be inconsistent with the analytic approach taken by the *Drye* Court: that state law determines the rights a taxpayer has in property and federal law determines whether those rights constitute "property" or "rights to property" pursuant to § 6321. *See Drye*, 120 S. Ct. at 481.

[14]In his separate concurrence, Judge Gilman cites to *Rogers v. Rogers*, 356 N.W.2d 288, 293 (Mich. Ct. App. 1984), to support the proposition that Don Craft possessed a contingent future interest in the Berwyck Property. Although the *Rogers* court did acknowledge that each spouse "is entitled to the enjoyment of the entirety and to survivorship," it emphasized that "neither the husband nor the wife has an individual, separate interest in entireties property, and neither has an interest in such property which may be conveyed, encumbered or alienated without the consent of the other." *Rogers* is thus consistent with Michigan Supreme

interest in the entireties property; and, because state law delineated no individual interest or right held by Don, there was nothing for federal tax law to deem to be "property" or "rights to property" for purposes of I.R.C. § 6321. Accordingly, *Craft I* is fundamentally consistent with *Drye*. *See Rodgers*, 461 U.S. at 702-03 n.31 (stating that cases which have found that a federal tax lien does not attach to a tenancy by the entirety "because neither spouse possessed an independent interest in the property . . . do no more than illustrate the proposition that, in the tax enforcement context, federal law governs the consequences that attach to property interests, but state law governs whether any property interests exist in the first place." (citing *United States v. American Nat'l Bank of Jacksonville*, 255 F.2d 504, 506 (5th Cir. 1958); *United States v. Hutcherson*, 188 F.2d 326, 331 (8th Cir. 1951)); *see also* 14 Mertens Law of Fed. Income Tax'n § 54A:13 (Supp. 2000) (citing *Craft I* for proposition that, although federal law determines whether a lien will attach to property interests held by delinquent taxpayer, "whether and to what extent a taxpayer has 'property' or 'rights to property' are [sic] determined under the applicable state law." (footnote omitted)).

**b.**

The IRS also argues *Craft I* is inconsistent with the *Drye* Court's refusal to subjugate federal tax law to state law legal fictions. *See Drye*, 120 S. Ct. at 482 (stating that "federal tax law 'is not struck blind by a disclaimer'" (quoting *Irvine*, 511 U.S. at 240)). But this proposition, too, had been established prior to *Craft I*, and the *Craft I* court was well aware of it. *See Craft I*, 140 F.3d at 643 (discussing *Irvine*, 511 U.S. at 240)). Indeed, the *Craft I* court rejected the IRS's argument that it was being duped by a state law legal fiction. *See id.*

---

Court's refusal to recognize a severable future interest held by one spouse in an entireties property. *See Sanford v. Bertrau*, 204 Mich. 244, 169 N.W. 880, 881 (1918). Moreover, to the extent that *Rogers* can be construed as being inconsistent with *Sanford* (which we believe it cannot), *Sanford* remains good law and is thus the controlling rule of decision.

not barred by the statute of limitations contained in I.R.C. § 6502. Sandra asserts no case law in her favor, and her claim has no merit.

We review de novo a district court's determination that a complaint was filed outside the relevant statute of limitations. *See Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 938 (6th Cir. 1999). The parties agree that the IRS assessed Don's federal tax liabilities in July 1988. At that time, § 6502 contained a six-year limitations period within which the IRS could begin collection proceedings on a tax assessment. *See* I.R.C. § 6502(a)(1) (1989). The statute provided that the limitations period begins to run on the date of the assessment of the tax. *See id.* Thus, under the statute in effect at the time, the IRS had until July 1994 to begin collection proceedings against Don. However, Congress amended the statute in 1990 to increase the § 6502 limitations period to ten years. *See* I.R.C. § 6502 (Historical and Statutory Notes). The amendment applied the new ten-year period to taxes already assessed for which the six-year limitations period had not expired. *See id.* Because Don's tax debts had already been assessed and the six-year limitations period had not run on the IRS's claim, the ten-year limitations period applied to Don's tax debts. Accordingly, the IRS had until July 1998 to begin collection proceedings against Don.

The government filed its answer to Sandra's complaint in July 1993. Because the government's fraudulent enhancement claim was tried by implied consent, *see supra*, its claim must be "treated in all respects as if [it] had been raised in the pleadings." *See* Fed. R. Civ. P. 15(b). The claim is thus deemed filed on the date that the IRS filed its answer in July 1993, well within the ten-year limitations period that began running in July 1988. *See id.*; Fed. R. Civ. P. 15(c).

**C.**

Sandra argues that Don's death in August 1998 makes moot the IRS's remedy in this case. She claims that the government stipulated at an early point in the case that its lien attached to proceeds of the sale of the Berwyck Property to

remand was, in the words of the court, "more casual than a trial sometimes looks" -- the trial took place with the parties, witnesses, and the judge sitting around a table in the courtroom -- the court admonished the parties that "it's still a federal court, and all the rules apply." *See Carlyle*, 674 F.2d at 556 (finding that where defendant raised defense for first time at trial, and then offered evidence of the defense, defense was argued by implied consent of the plaintiff for purposes of Rule 15(b)). *Cf. Yellow Freight Sys., Inc. v. Martin*, 954 F.2d 353, 358 (6th Cir. 1992).

Regardless of whether Sandra objected in a timely fashion to the government's theory, her argument fails because she cannot show that she has been prejudiced by the district court's decision to permit the IRS to argue the enhancement theory. Under Rule 15(b), "a district court may consider claims outside of those raised in the pleadings so long as doing so does not cause prejudice." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569 (2d Cir. 2000); *see also* 6A Wright et al., § 1493, at 36-40 ("Prejudice in this context means a lack of opportunity to prepare to meet the unpleaded issue."). Sandra cannot show that she suffered prejudice simply because the IRS changed its legal theory. *See Cruz*, 202 F.3d at 569. "Instead, a party's failure to plead an issue it later presented must have disadvantaged its opponent in presenting its case." *Id.* (quotation marks and citation omitted). Sandra knew of the government's theory prior to trial because the government had argued it in its pre-trial brief. Further, she argued the issue in her post-trial brief, which the district court considered. She was not prohibited from cross-examining the government's witnesses on the issue if she so chose, and she does not argue that she needed to discover additional evidence to defend against the fraudulent enhancement theory. Thus, the government's argument did not prejudice Sandra, and the issue was tried by her implied consent.

## B.

Sandra next argues that the district court erred by failing to find that the government's fraudulent enhancement claim was

We again reject the IRS's argument and find that the aspect of *Drye* reiterating the admonition regarding state law fictions is not a subsequent contrary view of the law. *See Hanover Ins. Co.*, 105 F.3d at 312; *Craft I*, 140 F.3d at 643.

### c.

We are not at all persuaded by the IRS's last-minute characterization of *Drye* as standing for the proposition that a right to inherit property is subject to a federal tax lien. Because Don Craft had a conditional right to take the Berwyck property by survivorship pursuant to Michigan law (*i.e.*, should Susan predecease him), the argument goes, *see Craft I*, 140 F.3d at 642 (citing *Leroy Lane I*, 910 F.2d at 347), he comes under this purportedly "new" rule. This rendering of *Drye* is patently overbroad. If the Supreme Court intended to hold that every conceivable interest in property, no matter how remote, is subject to a federal tax lien, we have little doubt that it would have said so outright. We do not think it so held. Indeed, the *Drye* Court specifically stated (demonstrating that "analogy is somewhat hazardous in this area," *see Rodgers*, 461 U.S. at 685-86) that a mere expectancy is not sufficient to constitute "property" or "rights to property" pursuant to § 6321: "Nor do we mean to suggest that an expectancy that has pecuniary value and is transferable under state law would fall within § 6321 prior to the time it ripens into a present estate."[15] 120 S. Ct. at 482-83 n.7; *see also United States v. Murray*, 217 F.3d 59, 63 (1st Cir. 2000) (stating that, pursuant to *Drye*, § 6321 is to be construed broadly, "but there are limits that reflect both common usage and policy. For example, the lien would likely not attach to land owned by a still-living relative of [the taxpayer], or to [his] expected inheritance of it, even if the relative had provided in his will that the land would go to [the

---

[15] In the instant case, Don Craft's expectancy of inheritance never ripened into a present estate. Indeed, Don predeceased Sandra.

taxpayer] on the relative's death.").[16]  Thus, we reject the government's argument that *Drye* stands for the proposition that a federal tax lien attaches to any right to inherit property, no matter how remote.[17]

### d.

In sum, *Drye* has not so fundamentally changed the legal landscape as to overrule *Craft I.  See Blachy v. Butcher*, 221 F.3d 896, 907 (6th Cir. 2000) (Gilman, J.) (post-*Drye* decision distinguishing holding of *Craft I* from question of how to treat entireties property in bankruptcy case); *United States v. Green*, 201 F.3d 251, 253 (3d Cir. 2000) (citing *Drye*, 120 S. Ct. at 478, and indicating that federal tax lien does not attach to property held as tenancy by entirety pursuant to Pennsylvania law); *see also* Edward Kessel and Steven R. Klammer, *Supreme Court Finds Disclaimer Ineffective to Avoid Federal Tax Lien*, 92 J. Tax'n 118, 122 (2000) (discussing impact of *Drye* and suggesting that, even after decision, federal tax lien law may not apply to dower, curtesy, or elective share rights). Accordingly, the IRS's argument on appeal is precluded by the law of the case doctrine.

### B.  Law of the Circuit

Our decisions in *Craft I* and in *Cole* are also law of the circuit.  As we recently stated, "One panel of this court may not overturn the decision of another panel of this court -- that may only be accomplished through an en banc consideration

---

[16]This is significant because the only interest which any member of the *Craft I* panel concluded might be subject to a federal tax lien was a future interest.  *Compare* 140 F.3d at 644 *with id.* at 646 (Ryan, J., concurring).

[17]The concurrence criticizes the court for "going too far" in characterizing the IRS's argument in these terms.  However, IRS counsel expressly endorsed this reading of the *Drye* decision during oral argument.

Issues for Trial" the issue of whether Don made fraudulent conveyances into the tenancy by the entirety at a time when he was insolvent actually shows that she objected to the issue prior to trial.  Sandra further argues that she did not object to the enhancement theory at trial because the judge had indicated that the trial would be "relaxed," and that he had ordered the parties to submit their legal arguments as part of their post-trial briefs rather than present them at trial.  Lastly, Sandra argues that the evidence that the government put on at trial did not necessarily go to the enhancement issue; thus, her failure to object to it did not imply her consent to try the issue.

"Fed. R. Civ. Pro. [sic] 15(b) states that issues tried by the express or implied consent of the parties shall be treated in all respects as if they had been raised in the pleadings." *Carlyle v. United States*, 674 F.2d 554, 556 (6th Cir. 1982); *see also* Fed. R. Civ. P. 15(b).  Although the parties agree that this court reviews for clear error the district court's finding that the IRS was not precluded from raising the fraudulent enhancement issue, we think the better view is that we review for abuse of discretion the district court's decision regarding whether an issue not raised in the pleadings has been tried by the implied consent of the parties.  *See Moncrief v. Williston Basin Interstate Pipeline Co.*, 174 F.3d 1150, 1160 (10th Cir. 1999);  6A Wright et al., Federal Practice and Procedure § 1493, at 41 (2d ed. 1990).

The district court did not abuse its discretion in finding that Sandra impliedly consented to trial of the fraudulent enhancement theory.  First, because the theory of fraudulent enhancement constitutes a well-established exception to Michigan fraudulent conveyance law, *see supra*, Sandra was on notice from the time of the government's answer to her complaint that fraudulent enhancement could be at issue in the case.  Further, as the government points out, although Sandra agreed that *whether the government should prevail* on the enhancement theory was a controverted issue for trial, she did not move to include the question of *whether the government could argue* the theory as a controverted issue in the Joint Final Pretrial Order.  Finally, although the trial on

issue of whether a fraudulent conveyance occurred in this case is a matter that should be determined by the district court." *See id.* As we read this language, *Craft I* directed the district court to investigate whether the facts of this case constituted a fraudulent conveyance under Michigan law. This is exactly what the district court did. It found that under Michigan law, the August 1989 transfer could not be fraudulent, because Michigan courts have "consistently held that creditors have no right to complain of a debtor's disposition of exempt [*i.e.,* entireties] property because such property could not be reached to satisfy debts had it remained in the debtor's hands." *See, e.g., Cross v. Commons*, 59 N.W.2d 41, 43 (Mich. 1953) (en banc). The court went on, however, to find that Don's mortgage payments were fraudulent under an exception to that rule. *See McCaslin*, 292 N.W. at 699. The court's consideration and application of Michigan fraudulent conveyance law was in harmony with the scope of the *Craft I* court's remand, and we reject Sandra's contention otherwise.

### 2. Implied Consent

Sandra also argues that the district court erred in permitting the IRS to argue its fraudulent enhancement theory upon remand because she did not consent to trial of the issue. The district court found that Sandra had impliedly consented to trial of the fraudulent enhancement theory by failing to object to the IRS's claim until after the trial; by consenting to the Joint Final Pretrial Order, which indicated that the enhancement claim was a controverted issue for trial; and by failing to object at trial to the government's evidence that Don made payments on behalf of the entireties property from 1979 to 1985, which "could have been relevant only to the Government's contention that Don's payments into the entireties property from 1979 through 1985 while he was insolvent were fraudulent." Sandra asserts that she objected to the fraudulent enhancement theory at the final pretrial conference, "an event for which there is unfortunately no recorded transcript," Appellee's Br. at 18, and in her post-trial brief. Sandra also alleges that the fact that the Joint Final Pretrial Order lists among the "Controverted and Unresolved

of the argument." *Pollard v. E.I. DuPont de Nemours Co.*, 213 F.3d 933, 945 (6th Cir. 2000). As discussed, *supra*, *Craft I* is not clearly erroneous, and it has not been called into doubt by any decision of the Supreme Court.[18] Because this panel may not conduct a plenary review of the result reached by a prior panel, the decision reached by the *Craft I* must stand.[19]

### III.  SANDRA'S CROSS-APPEAL

In her cross-appeal, Sandra first argues that the IRS was precluded from arguing on remand the fraudulent enhancement theory upon which it ultimately won relief. Next, Sandra argues that the governing statute of limitations barred the IRS's recovery under its fraudulent enhancement theory. Third, she claims that the IRS's remedy became moot upon Don's death. Finally, Sandra asserts that the IRS owes her interest on the funds to which she became entitled pursuant to our opinion in *Craft I*. Sandra has also submitted to this court a motion for costs under both Fed. R. App. P. 38 and the Equal Access to Justice Act, 28 U.S.C. § 2412. For the reasons that follow, we **AFFIRM** the judgment of the district court and **DENY** Sandra's motion for costs.

---

[18]In his concurrence, Judge Gilman twice "recommend[s] that this case be revisited en banc." There is a clearly delineated procedure under the Federal Rules for a party to seek review of a matter en banc. *See* Fed. R. App. P. 35(b). The government is obviously aware of this procedure in that it previously filed a petition for en banc review of *Craft I*, although its petition did not garner a single vote. Moreover, this court's published Internal Operating Procedures provide that any active judge of this court may request, *sua sponte*, a request for a poll for rehearing on banc, even in the absence of a petition from a party. *See* 6 Cir. I.O.P. 35(c). We think it appropriate to reserve any discussion of whether this case should be reheard en banc as a part of the process contemplated by the aforementioned rules.

[19]All of the IRS's arguments on appeal require us to reject the holding of *Craft I*. Since we are unable to do that for the reasons discussed above, we **DISMISS** the government's appeal.

**A.**

Upon remand, the IRS argued two theories of recovery before the district court: first, that the August 1989 transfer from Don and Sandra to Sandra was a fraudulent *conveyance* pursuant to Michigan law, *see* Mich. Comp. Laws §§ 566.11-.23; and second, in the alternative, that Don's payment of mortgage and property tax obligations[20] from 1979 to 1985 on behalf of the entireties property constituted a voidable, fraudulent *enhancement* of the property. Sandra objected to the fraudulent enhancement theory (she contends that she did do early and often, *see infra*) on the grounds that the IRS had not raised the theory until immediately prior to trial, and that the theory went beyond the scope of this court's remand. The district court rejected Sandra's objection, and found that although the IRS had not raised specifically the fraudulent enhancement issue in its answer to Sandra's complaint,[21] the issue was tried by the implied consent of the parties, pursuant to Fed. R. Civ. P. 15(b).

In her cross-appeal, Sandra argues that the district court erred by permitting the IRS to argue on remand its new theory of fraudulent enhancement. First, Sandra asserts that the fraudulent enhancement issue went beyond the scope of this court's remand. Second, Sandra claims that she did not consent to trial of the new theory, but rather "objected repeatedly, vehemently and at every possible opportunity to the IRS raising a new issue for the first time on remand." Appellee's Br. at 16. For the reasons that follow, Sandra's arguments fail.

---

[20]On appeal, the government argues only that the mortgage payments -- and not the property tax payments -- constituted a fraudulent enhancement of the property.

[21]The IRS had raised the fraudulent conveyance argument as a defense in its answer to Sandra's complaint.

**1. Scope of Remand**

Sandra contends that the only issue before the district court on remand was whether she and Don fraudulently transferred the property to Sandra when they executed the August 28, 1989 quitclaim deed. *See Craft I*, 140 F.3d at 644. The IRS claims that this court left open the broader question of whether *any* fraudulent conveyance occurred with regard to the Berwyck Property. The *Craft I* court stated as follows:

> [T]here remains an issue of whether a fraudulent conveyance occurred in this case, an issue that the district court did not address. Under Michigan law, one spouse cannot use the doctrine of tenancy by the entirety to defeat the rights of a judgment creditor. Such a fraudulent transfer can be set aside . . . . The issue of whether a fraudulent conveyance occurred in this case is a matter that should be determined by the district court. If the conveyance was fraudulent and therefore set aside, the IRS could be entitled to half the proceeds of the June 1992 sale, or $59,944.10. Accordingly, upon remand, the district court should consider whether the Berwyck Property was transferred for fraudulent purposes.

*Id.* (citations omitted).

The district court did not exceed the scope of our remand by considering the issue of whether Don's mortgage payments constituted a fraudulent transfer under Michigan law. The last sentence of the above-quoted section of *Craft I*, which directed the district court to "consider whether the Berwyck Property was transferred for fraudulent purposes," does not raise exclusively the question of whether the August 1989 transfer itself was fraudulent; rather, it permitted the district court to consider also whether Don and Sandra transferred the property for other fraudulent purposes as well. *See id.* This conclusion is consistent with the opening sentence of the *Craft I* court's fraudulent conveyance discussion, which states in broad terms that "there remains an issue of whether a fraudulent conveyance occurred in this case." *See id.* It is also consistent with this court's broad statement that, "[t]he